ALDON BUILDERS, INC. *v.* MILTON C. KURLAND ET UX.

[No. 1171A243. Filed June 27, 1972.]

*Kenneth D. Reed,* of Hammond, for appellent.

*David A. Cohen,* of East Chicago, *Frank J. Galvin, Jr.,* of Hammond, for appellees.

STATON, J.—STATEMENT OF APPEAL: Aldon Builders, Inc. is appealing from a judgment rendered in favor of Milton C. Kurland and Pearl Kurland which is in the sum of $11,-687.13. The original action was commenced by the Kurlands for an alleged breach of contract by Aldon Builders, Inc. whose Motion to Correct Errors alleges that the trial court erred:

1. By concluding that Aldon Builders acquiesced in a rescission of the contract;
2. by not enforcing the contract provisions which the court found to be valid;
3. by failing and refusing to make a finding on Defendant's Cross-Complaint and Counter-Claim;
4. by awarding excessive damages to the Kurlands.

In our opinion that follows, we reverse the trial court's judgment for the reason that the findings of fact do not support a rescission as concluded by the court.

STATEMENT OF FACTS: Milton C. Kurland and Pearl Kurland entered into an express contract with Aldon Builders, Inc. for the construction of a custom-built house

at 1437 Holly Lane in Munster, Indiana for a total purchase price of $47,475.00. Possession of the new custom home was to be delivered to the Kurlands by August 25, 1969. The Kurlands paid $10,607.00 under the terms of the contract before deciding to purchase another home in Flossmoor, Illinois. Some demands for alterations had been made by the Kurlands. Aldon Builders, Inc. had requested that the Kurlands make their selections of paneling, floor coverings and paint colors, but these requests had been ignored. On July 14, 1969 the Kurlands' attorney sent a letter to Aldon Builders which advised that another buyer should be found for the custom home since some specifications had not been performed. The Kurlands purchased their home in Flossmoor, Illinois on August 19, 1969. After making some necessary changes to enhance the saleability of the custom home, Aldon Builders, Inc. sold the custom home to Phillip J. Berns for $52,000.00. Clause seven of the contract which the Kurlands had signed for the construction of the custom home provided that if they failed to comply with the covenants then ". . . any payments made hereunder shall be retained by the Seller as liquidated damages."

The Kurlands filed their complaint for breach of contract on October 14, 1969 and received a judgment containing the following "Special Findings of Facts" and "Conclusions of Law":

## "SPECIAL FINDINGS OF FACT

"This cause having been submitted to the Court for trial, without the intervention of a Jury, and the cause having been submitted and evidence heard on July 7, 1970, and July 8, 1970, and the parties having rested, and the Court having considered the evidence and arguments of counsel, now pursuant to Rule TR. 52, specially finds the facts to be as follows:

(1) That the Court had jurisdiction of the subject matter of this action, the parties hereto, and the power to hear and determine this cause.

(2) That at all pertinent times, the defendant, cross-complainant Aldon Builders, Inc. (hereinafter referred to as Aldon for brevity sake) was an Indiana corporation for profit, the sole officers and stockholders of which were Alfred Gomez, Sr. and his son Alfred Gomez, Jr.

(3) That Aldon was at all pertinent times engaged in the business of constructing buildings with primary emphasis on the construction of single-family dwellings in the Town of Munster, Lake County, Indiana.

(4) That the aforementioned Alfred Gomez, Jr. has approximately twenty-two years experience as a home builder, and the aforementioned Alfred Gomez, Sr. has approximately thirty years experience as a home builder.

(5) That at all pertinent times, Aldon was represented by Cunningham Realty being a firm of real estate brokers and salesmen located in Munster, Indiana, and more particularly by one salesman namely Paul Grcevich. That the job of said real estate brokerage and said individual was to locate purchasers desiring to purchase a house being constructed by Aldon on speculation or to have Aldon custom-build a house for said purchaser.

(6) That some time immediately prior to May 22nd, 1969, plaintiffs, cross-defendants Milton Kurland and Pearl Kurland, husband and wife (hereinafter referred to as Kurlands for brevity sake), contacted Paul Grcevich of Cunningham Realtors as agent for Aldon and indicated they desired to purchase or have constructed a home in the Town of Munster, Indiana.

(7) It was decided between Kurlands, Cunningham Realtors and Aldon prior to May 22, of 1969, that Aldon would custom-build a home for Kurlands at 1437 Holly Lane, Munster, Indiana, (being Lot 56 Fair Meadows 13th Addition to the Town of Munster, Lake County, Indiana), and that the matter of the plans and specifications were to be worked out between the parties.

(8) That at the parties' request, Superior Lumber Company supplied the plans and Kurlands and Aldon drafted and redrafted and finally agreed upon specifications for the construction which were acceptable.

(9) On May 22, 1969, Aldon and Kurlands entered into a 'Contract and Construction Agreement' for the con-

struction of a residence at 1437 Holly Lane, Munster, Indiana, for the sum of $47,475.00 to be paid as provided in said agreement. Said agreement was offered and admitted into evidence as Plaintiff's Exhibit No. 4 and includes the specifications attached thereto and the plans which are referred to in the agreement but not attached thereto. Said plans were offered and received in evidence as Plaintiff's Exhibit No. 5.

(10) Said contract between the parties provides in substance that Aldon would construct the home described in the plans and specifications at the given location for the sum of $47,475.00 to be paid $1,000.-00 earnest money upon execution of the contract, $8,-000.00 when the basement foundation was in and damp-proofing completed, $3,000.00 to be paid when dri-wall installation was completed, and the balance of $35,475.00 to be paid at the time of closing. The seller, Aldon, was to furnish the labor and materials to construct the home; the buyer or Kurlands were to make personal selections of items such as countertops, masonry, floor coverings, paint colors and electrical fixtures; Aldon was to have exclusive possession of the structure and building site during the entire period of construction and until final approval; there were to be no deviations from the plans and specifications except that the buyer agreed to accept any necessary substitutions of materials acceptable to both parties; the contract also contained the following provisions:

'6. The Seller agrees to diligently prosecute the construction to a conclusion unless prevented by acts of the Buyer or his agents. Seller agrees to complete the construction, obtain an occupancy permit, and deliver possession of subject property to Buyer on or before August 25, 1969. Should Seller fail to complete construction, obtain an occupancy permit and deliver possession of subject property to Buyer on or before August 25, 1969, the contract price shall be reduced One Thousand ($1,000.00) Dollars as liquidated damages. Seller and Buyer hereby agree that should there be any minor items remaining undone at the time of the delivery of the property and payment of the purchase price, a list of the same will be made,

signed by both parties, and an amount equal to twice the cost of same, as determined by the lending institution, shall be withheld from the purchase price till said items shall have been performed by the Seller. This shall be the only money withheld from Seller save and except for mechanic's liens. Should Seller complete prior to August 25, 1969, Buyer agrees to close upon one week's notice.

'If, upon receipt of said notice, Buyer refuses or fails to consummate this transaction within seven (7) days and to pay balance of purchase price, then they shall pay the Seller the added sum of $1,000.00.

'7. In the event the Buyer should fail to observe or comply with any of the foregoing covenants on their part to be performed, the Buyers' deposit and any payments made hereunder shall be retained by the Seller as liquidated damages.'

(11) In anticipation of the execution of said agreement on May 22, 1969, Aldon Builders began construction by digging the foundation and laying the foundation and were paid on two separate occasions. The first sum of $1,000.00 was paid on May 22, 1969, under the agreement and later the sum of $8,000.00 was paid on May 29, 1969, under the agreement by Kurlands to Aldon.

(12) That Aldon proceeded with construction as required under the agreement. From time to time during the course of construction, the parties, by mutual agreement, amended the specifications portion of the contract in the following particulars, to-wit:

(a) Kurlands requested the installation of brick on the front of the house at an additional cost of $300.00.

(b) The parties agreed to add insulation in places where it was not required at an additional cost of $100.00;

(c) The parties agreed to the installation of five additional TV outlets at a cost of $6.00 each for a total of $30.00;

(d) The parties agreed to the installation of twenty-six additional outlets at $9.00 each for a total of $234.00;

(e) The parties agreed to additional light fixtures for the additional outlets in the amount of $152.-58;

(f) The parties agreed to increase the size of the hot water tank to 60 gallons at an extra cost of $35.00;

(g) The parties agreed to a gas lighter for the fireplace at an extra cost of $100.00; and

(h) The parties agreed to the installation of colored bath fixtures rather than plain white at an additional cost for color of $300.00, for total additions amounting to $1,251.58.

(13) The contract figure of $47,475.00 which was to be the cost of construction presupposed that the Kurlands would furnish carpet for the living room, dining room, stairs and upper hallway, which they did not furnish and which Aldon had to furnish at a cost of $540.00; that Kurlands would furnish carpeting for three bedrooms which they did not furnish and which Aldon therefore had to furnish to make the house saleable in the sum of $487.50; and further, that Kurlands would furnish windows totaling thirteen in number, which were not furnished and which Aldon had to supply at an additional cost of $727.21, for a total of $1,754.71.

(14) That the Kurlands furnished Anderson windows and sliding doors at a cost of $1,595.00 to Aldon which were accepted by Aldon and installed in the house.

(15) That the Kurlands furnished telephone wiring at a cost of $12.00 which was installed in the house.

(16) That during the period of construction of said house and on several occasions prior to August 25, 1969, completion date under the contract, Kurland individually and through his agents, notified and advised Aldon in writing, by telephone, and orally, that Kurlands were not going to fulfill their obligations under the contract and that Adon and Cunningham should attempt to locate another purchaser for the house under construction. No further monies were paid by Kurlands to Aldon.

(17) That during the course of construction and in the middle of July, 1969, being more than a month before construction was due to be completed under the contract, Kurlands made a demand upon Aldon that

the decorative beams be installed when said beams were in fact finished items which could have and ordinarily would have been installed shortly prior to the completion date and which were in fact installed prior to the August 25, 1969, completion date.

(18) That likewise, in the middle of July, more than a month prior to the August 25, 1969, completion date, the Kurlands made a demand upon Aldon to raise the height of the ceiling in the kitchen from 7 feet to 8 feet, even though the plans specifically called for a dropped ceiling in the kitchen and showed all other ceilings being 8 feet. It was necessary that the kitchen ceiling be dropped in order to accommodate plumbing for the two upstairs bathrooms there being no other method or means from a construction standpoint to cover or otherwise accommodate said plumbing under the plans and specifications forming a part of the contract of May 22, 1969.

(19) Aldon made numerous demands on Kurland to select various items such as paneling and floor coverings and paint colors in order to permit Aldon to complete and go ahead with construction by August 25, 1969, to which Aldon received no response, said selections never being made by Kurlands. In order to complete construction, Aldon did make the selections of various items which Kurlands were to have selected under the agreement and did in fact substantially complete construction by August 25th, 1969.

(20) That following the various indications by Kurlands to Aldon that Kurlands would not fulfill their obligations under the contract prior to August 25th of 1969, Aldon did complete construction making selections of paneling, and floor coverings and paint colors and various modifications to the house in order to make it saleable.

(21) That on or about August 25, 1969, Aldon sold the house in question to Phillip J. Berns and his wife for $52,000.00 and that the basic cost to Aldon included the add ons agreed to between the Kurlands and Aldon in the sum of $1,251.58, the additional items installed by Aldon to make the house saleable in the sum of $1,754.71 and the Anderson windows and sliding doors furnished by the Kurlands in the sum of $1,595.00. The basic cost to Aldon al-

so included additional items requested by Phillip J. Berns and his wife.

(22) That Aldon made its customary profit of about $4,-000.00 on the resale of the house to Phillip J. Berns and his wife."

## "CONCLUSIONS OF LAW

"Upon the foregoing Special Findings of Fact, the Court now concludes the law to be as follows:

1. The conduct, words and deeds of the Kurlands occurring between May 22, 1969, and August 25, 1969, as communicated to Aldon clearly indicated an intention by Kurlands not to fulfill their obligations under the contract. Their acts were a direct repudiation and rescission of the contract.

2. Aldon sold the property that was the subject matter of the contract to third parties, viz., Phillip J. Berns and his wife, thereby evincing, in a most decisive and conclusive manner, that it concurred and acquiesced in the rescission of the contract.

3. The actions of the Kurlands and Aldon resulted in a rescission of the contract by common consent and therefore mutual agreement.

4. The down payment of $1,000.00 and progress payment of $8,000.00 made to Aldon by the Kurlands and the cost of property in the amount of $1,607.00, to-wit: The Anderson windows and sliding doors and the telephone wiring, furnished to Aldon by the Kurlands and installed in the house by it may be recovered by the Kurlands from Aldon with interest at the rate of 6% per annum from August 25, 1969."

The trial court then entered the following judgment:

"In accordance with the Special Findings of Facts and Conclusions of Law made and entered herein the Court now enters judgment.

"It is therefore considered, ordered and adjudged by the Court that plaintiffs and cross-defendants Milton Kurland and Pearl Kurland have and recover from and of the defendant and cross-plaintiff the sum of $11,687.13 and is further ordered that the plaintiffs have and recover from and of the defendant their costs laid out and expended in the sum of $————."

CONTENTION OF ERROR NO. 1: Aldon Builders, Inc. state their first contention of error as follows:

"The Trial Court Erred In Concluding, As A Matter of Law, On The Facts As Specially Found, That Aldon Builders Acquiesced In A Rescission Of The Contract By Kurlands And That Said Rescission Was Commonly Consented To And Accomplished By Mutual Agreement."

We agree with this contention.

The "Special Findings of Fact" do not support Conclusions of Law Two (2) and Three (3) of the trial court's judgment. The "Special Findings of Fact" do support the conclusion of law urged by Aldon Builders, Inc. that the contract was breached by the Kurlands. Our examination of the entire record fails to disclose that the issue of rescission was ever litigated or tried by the parties.[1] Evidence brought into the record collaterally on pleaded issues may reflect superficially upon the theory of rescission. The issue of rescission was never tried by the parties during the trial. Rule TR. 15(B) of the Indiana Rules of Procedure provides:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. . . ."

In *Hacker* v. *Review Board* (1971), 149 Ind. App. 223 [26 Ind. Dec. 221], 271 N. E. 2d 191, 195, this Court held:

---

1. Professor Arthur L. Corbin in his treatise, *Corbin on Contracts* (one vol. ed. 1952), § 1236 defined rescission as ". . . [A] mutual agreement by the parties to an existing contract to discharge and terminate their duties under it. Just as in the case of the formation of a contract, so also in the case of its recission there are expressions of assent by both parties—usually in the form of an offer by one and an acceptance by the other." Professor Walter H. E. Jaeger in *Williston on Contracts* (3rd ed. 1970), § 1454A stated: "'Rescind' and 'rescission' are words in ordinary use, and should have no different signification in legal terminology than they have in other connections. 'Rescind' means to abrogate or annul, and may be applied to a variety of transactions such as a vote, a transfer of property, or a contract." In the early case, *Gwynne* v. *Ramsey* (1884), 92 Ind. 414, 417, the Indiana Supreme Court in discussing what constitutes a rescission stated: " . . . One party can no more rescind than one party can make a valid and binding contract between two or more parties. . . ." See also I.L.E., Contracts § 201-206.

". . . [F]ailure to object is not the only requirement necessary to impliedly litigate a new issue. Both parties to the proceedings must litigate the new issue; and the evidence to support the introduction of a new issue cannot be adduced under cover of asking questions about an already pleaded issue. *Kaye* v. *Smitherman*, 225 F. 2d 583 (10th Cir. 1955) ; *Hall* v. *National Supply Co.*, 270 F. 2d 379 (5th Cir. 1959) ; *Gallon* v. *Lloyd-Thomas Co.*, 264 F. 2d 821 (8th Cir. 1959) ."

A party is entitled to some notice that an issue is before the Court which has not been pleaded or has not been agreed to in a pre-trial order. This is especially true where the new issue is not unequivocally clear by the evidence being submitted. This is not being technical. This is being fair. A party should be given an opportunity to meet the issues which the court is considering. The evidence shown by this record would not be sufficient notice to a reasonably competent attorney that the issue of rescission is being considered by the court. The court's own "Special Findings of Fact" do not support a conclusion of law founded upon the theory of rescission.

We further note that there was not any motion to amend the pleadings to conform with the evidence by either party.

"The purpose of an amendment to conform to proof is to bring the pleadings in line with the actual issues upon which the case was tried; therefore an amendment after judgment is not permissible which brings in some entirely extrinsic issue or changes the theory on which the case was actually tried, even though there is evidence in the record—introduced as relevant to some other issue—which would support the amendment. This principle is sound, since it cannot be fairly said that there is any implied consent to try an issue where the parties do not squarely recognize it as an issue in the trial." 3 Moore's Federal Practice § 15.13[2], at 991-92 (2d ed. 1968).

CONTENTION OF ERROR NO. 2: Aldon Builders, Inc.'s second contention of error is stated as follows in its brief:

"The Trial Court Erred in Failing to Enforce The Provision of the Contract Between the Parties Which it Found to be Valid and Binding on the Parties."

We agree with this contention of error too. The "Special Findings of Fact" leave no alternative but to proceed to enforce the contract which has been breached.[2]

There is no need to extend this opinion by discussing in detail Aldon Builders' contentions of error no. 3 and no. 4 since we have found error and must reverse the trial court's judgment.[3] *Callahan* v. *New York Central Railroad Co.* (1962), 134 Ind. App. 232, 180 N. E. 2d 547; *Finney* v. *L. S. Ayres & Co.* (1965), 137 Ind. App. 430, 207 N. E. 2d 642; *Selner* v. *Fromm* (1969), 145 Ind. App. 378, 251 N. E. 2d 127.

The judgment of the trial court should be and the same hereby is reversed with instructions to grant Aldon Builders, Inc. a new trial.

2. Penalty is usually injected into a proceeding where a contract provides for liquidated damages. This should be determined as a matter of law. *Lettellier* v. *Abiline Flour Mills Co.* (1935), 101 Ind. App. 20, 198 N. E. 111. This Court has suggested several tests to be used by the trial court in *Czeck* v. *Van Helsland* (1968), 143 Ind. App. 460, 463, 241 N. E .2d 272:

"Under the tests established in a series of cases dealing with the problem of liquidated damages, we find two central qustions must be answered:

1. Does the liquidation provision attempt to secure an amount for the nonbreaching party which is reasonably proportionate to the amount of actual damages which will be sustained in the event of a breach?

2. Is the provision for liquidated damages designed to represent the measure of actual lamages, or is it an apparent effort to penalize the breaching party, so that the damages will be disproportionte to the actual damages sustained?"

3. Contention of Error No. 3: "The Trial Court Erred in Failing and Refusing to Make A Finding, Enter a Decision or Enter Judgment on Defendant's Cross-Complaint and Counter-Claim. The Record Shows That Defendant Aldon Builders Filed a Cross-Complaint and Counter-Claim." Aldon Builders, Inc. filed a Cross-Complaint and Counter-Claim on July 6, 1969 which was one day before trial. The trial began on July 7 and concluded on July 8, 1969. No responsive pleading was filed to either the Cross-Complaint or Counter-Claim. Aldon Builders, Inc. had filed previously an answer on January 22, 1969. See Rule TR. 6(C) and Rule TR. 13(F) of the Indiana Rulesof Procedure. Also see *Commercial Credit Corp.* v. *Miller* (1972), 151 Ind. App. 580 [30 Ind. Dec. 233], 280 N. E. 2d 856.

Hoffman, C.J. and Sharp, J., concur.

NOTE.—Reported in 284 N. E. 2d 826.