**ELKHART COUNTY FARM BUREAU COOPERATIVE ASSOCIATION, INC.,** Appellant (Plaintiff below),

v.

**Leroy HOCHSTETLER and Ervin Hochstetler, Appellees (Defendants below).**

No. 3–379A64.

Court of Appeals of Indiana, Third District.

March 30, 1981.

Rehearing Denied May 7, 1981.

Martha A. Foreman, Goshen, for appellant.

Richard K. Muntz, Petersen & Muntz, LaGrange, for appellees.

STATON, Judge.

The Elkhart County Farm Bureau Cooperative Association, Inc., appeals the entry of a negative judgment on its complaint on open account against Leroy and Ervin Hochstetler. After a bench trial, the trial court found that Farm Bureau's agents made certain representations which estopped Farm Bureau from asserting its claim against the Hochstetlers.

On appeal, Farm Bureau contends that the trial court's judgment is contrary to law in that the Hochstetlers failed to set forth estoppel as an affirmative defense in their responsive pleadings, and that the estoppel defense was not tried with the implied consent of Farm Bureau.

We reverse.

I.

Prologue

The principal parties in this action are (1) Farm Bureau, a seller of chicken feed, (2) Leroy and Ervin Hochstetler, farmers in the business of raising chickens, and (3) J. J. Poultry, a wholesaler of chickens that have been raised to maturity by farmers. Paul Bollinger, the poultry field man for Farm Bureau, and Tobe Graber, the president and part-owner of J. J. Poultry, developed a promotional device to stimulate the sale of their products. Bollinger was to find independent farmers in the Elkhart County area to raise young chicks into roaster chickens on a guaranteed profit basis. Farm Bureau would provide the young chicks, feed, medication, and other attendant supplies to the farmers. The farmers would raise the chicks to the roaster stage of growth (six to seven pounds at market time). When the chickens matured, J. J. Poultry would pick up the chickens from the farms, process the chickens, and sell them to a wholesaler on the next rung of the market ladder. The terms of this promotional device were embodied in a "Roaster Production Agreement," which Bollinger presented to participating farmers on behalf of J. J. Poultry.

The Hochstetlers agreed to participate in the chicken-raising plan developed by Farm Bureau and J. J. Poultry. The financial arrangement among the parties worked as

follows: The Hochstetlers would receive three cents per pound for their labor in raising the chickens to maturity. Farm Bureau would bill the Hochstetlers directly for the cost of chicks, feed, and attendant supplies. The Hochstetlers would in turn deliver the bills to J. J. Poultry. J. J. Poultry would issue a check in the name of either Leroy or Ervin Hochstetler to cover the bills sent in their names by Farm Bureau. The Hochstetlers would deduct their three cents per pound commission and deliver the balance to Farm Bureau. In actuality, the Hochstetlers endorsed most of the checks and then sent them to Farm Bureau. The Hochstetlers would occasionally cash one of the checks received from J. J. Poultry to collect their commission.

The chicken-raising plan ended in 1975 when the chicken industry suffered severe economic setbacks. J. J. Poultry became insolvent during this period and discontinued sending checks to the Hochstetlers. Farm Bureau's books showed that the Hochstetlers owed nearly $12,000 to Farm Bureau for chicks, feed, and supplies. After a period of negotiation, Farm Bureau demanded that the Hochstetlers satisfy the open accounts which were in their names. The Hochstetlers refused to pay on the accounts claiming that the debt belonged to J. J. Poultry under the "Roaster Production Agreement."

Farm Bureau commenced this action to recover the balance due on the Hochstetlers' accounts. In their responsive pleadings, the Hochstetlers asserted as a defense that they had leased their poultry houses to J. J. Poultry and that any goods delivered to the Hochstetlers by Farm Bureau were for the use and benefit of J. J. Poultry. This was the only defense the Hochstetlers asserted. The case went to trial, and the trial court determined that Farm Bureau was estopped from recovering the balance due on the accounts because its agents had made representations indicating that J. J. Poultry was financially responsible for the Hochstetlers' accounts.

## II.

### Estoppel Defense

■ Farm Bureau contends that the trial court erroneously based its judgment on the affirmative defense of estoppel which was not set forth in a responsive pleading. Farm Bureau further contends that the estoppel defense was not tried with its implied consent. We agree with Farm Bureau's contentions.

Trial Rule 8(C) of the Ind.Rules of Trial Procedure provides that an affirmative defense must be set forth in a responsive pleading by the party with the burden of proving the defense. While TR. 8(C) appears to impose an absolute duty to raise an affirmative defense in a responsive pleading, Indiana courts have modified the mandatory nature of the rule by interpreting it in conjunction with TR. 15(B) of the Ind. Rules of Trial Procedure, which provides in pertinent part:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. . . ."

Chief Judge Buchanan has explained the effect of TR. 15(B) on TR. 8(C) as follows:

"It is true Trial Rule 8(C) of the Indiana Rules of Procedure imposes the burden of pleading and proving any matter of avoidance on the defendant. However, Trial Rule 15(B) provides an escape hatch. If the issue is tried by the implied consent of the parties it is treated as if raised by the pleadings. Case law is to the same effect. *Indianapolis Transit System, Inc. v. Williams* (1971), 148 Ind. App. 649, 269 N.E.2d 543, held:

'Either party may timely demand strict adherence to the predetermined route [pleadings] or, if deviation is permitted, the time necessary to prepare to meet the new issue. But when the trial has ended without objection as to the course it took, the evidence then controls.'

*Id.* at 658, 269 N.E.2d at 550." (Footnotes omitted.).

*Puckett v. McKinney* (1978), Ind.App., 373 N.E.2d 909, 911; *see also, Lawshe v. Glen Park Lumber Co., Inc.* (1978), Ind.App., 375 N.E.2d 275, 277–78. The Court of Appeals' interpretation of TR. 8(C) in light of TR. 15(B) is congruent with the Indiana Supreme Court's directive that neither the pleadings of the parties nor the pretrial order issued by the trial court should operate to frustrate the trier of fact from finding the facts which a preponderance of the evidence permits. *Ayr-Way Stores, Inc. v. Chitwood* (1973), 261 Ind. 86, 93–94, 300 N.E.2d 335, 340.

While amendments to the pleadings under TR. 15(B) should be liberally granted to ensure adjudication of all issues raised at trial, the rule should not be applied indiscriminately so as to render TR. 8(C) and our practice of notice pleading meaningless. The recent observations of Judge Robertson make it apparent that TR. 15(B) should be applied with caution:

"This broad ability to amend the pleadings to conform to the evidence is, however, not without its limitations. As previously discussed, the purpose behind the rule is to allow the parties some flexibility in litigating the case, and to further justice by allowing the evidence brought forth at trial [to] determine the parties liability. The basic text of fairness would indicate that a 'party is entitled to some notice that an issue is before the court which has not been pleaded or has not been agreed to in a pre-trial order.' *Aldon Builders, Inc. v. Kurland*, (1972), 152 Ind.App. 570, 580, 284 N.E.2d 826, 832. The court of appeals in justifying this requirement stated that 'This is especially true where the new issue is not unequivocally clear by the evidence being submitted. This is not being technical. This is being fair. A party should be given the opportunity to meet the issues which the court is considering.' *Id.; Fisel v. Yoder*, (1974) 162 Ind.App. 565, 320 N.E.2d 783; *Normouth Drywall v. Erectioneers, Inc.*, (1978), Ind.App., 381 N.E.2d 490.

"While this court is in full accord with those cases permitting a liberal interpretation of T.R. 15(B) which allow the pleadings to be amended to conform to the evidence presented at trial under an implied consent concept, we also believe that this basic precept notwithstanding, the opposing party must have the benefit of some type of notice as to what additional theories of recovery are being litigated when such a change from the pleadings is not readily apparent from the scope of the evidence presented at the trial."

*Bahre v. Metropolitan School District of Washington Township, Marion County* (1980), Ind.App., 400 N.E.2d 197, 200.

In the present case, the record reveals that neither the responsive pleadings nor the evidence presented was sufficient as a matter of law to put Farm Bureau on notice of the Hochstetlers' intent to assert the affirmative defense of estoppel. The evidence on which the Hochstetlers relied to establish the basis of their estoppel defense was introduced to show that Farm Bureau was aware of a principal-agent relationship between J. J. Poultry and the Hochstetlers. A review of the trial proceedings supports our position.

The opening statement of the Hochstetlers' attorney reflected their intention of relying on an agency defense throughout the trial:

"MR. MUNTZ: I think, briefly our defense is we were the agent of J. J. Poultry, Inc., which is an Indiana corporation, and my clients were engaged in—more or less it amounted to the rental of their chicken houses and the supplying of labor to J. J. Poultry. In return, they were paid for the chickens produced based upon cost plus, I believe a minimum of three cents per pound, and it is our contention that the Elkhart County Farm Bureau Co-op was aware of the principal and agent relationship through its employee, Paul Bollinger, who was instrumental in setting up this particular agreement, and therefore, we assert that the Farm Bureau Co-operative has to look to the actual principal involved, which would be J. J. Poultry, Inc., rather

than the agents, Ervin and LeRoy Hochstetler, since the principal was disclosed.

"I think we will also show that the Elkhart County Farm Bureau Co-op accepted all payments on the account, which were made and were through J. J. Poultry, Inc. Basically, it is a question of liability of an agent to a third person." Their attorney maintained this theory of defense in his argument in support of a motion for judgment on the evidence, which was asserted after Farm Bureau's case-in-chief:

"MR. MUNTZ: Yes, Your Honor. Your Honor, at this time we would move for a directed finding in favor of each defendant for the reason that the plaintiff has "failed to introduce any evidence whatsoever tending to show that the goods delivered to the places of business of the defendants were for the use and benefit of the defendants rather than of third persons, and therefore, they have failed to establish an obligation on behalf of the defendants to pay for these goods."

During their case-in-chief, the Hochstetlers attempted to introduce the "Roaster Production Agreement" which embodied the terms of the chicken-raising plan. Farm Bureau's attorney objected to its admission based on its irrelevancy to the issues in the case. The Hochstetlers' attorney responded to the objection by stating:

"MR. MUNTZ: I think it does, Your Honor. I think as I stated before, we are trying to establish a principal and agent relationship between the defendants and J. J. Poultry, Inc., and they were also trying to establish that the Farm Bureau Co-op was aware of this Farm Bureau Co-op relationship, and that this witness, who was an employee of the plaintiff association, has identified this document as being one which he took to the growers on behalf of J. J. Poultry, Inc., so that Farm Bureau Co-op could sell some poultry feed. And I think it is relevant for that purpose."

The Hochstetlers' case-in-chief continued with the purpose of eliciting from their witnesses facts that would evince Farm Bureau's awareness of the principal-agent relationship between J. J. Poultry and themselves. Not once during trial did the Hochstetlers manifest an intent to rely on estoppel as a defense to Farm Bureau's allegations.

The first time the Hochstetlers expressly raised the estoppel defense was 28 days after trial. In their proposed findings of fact and conclusions of law, the Hochstetlers asserted that Farm Bureau was estopped from asserting its claim against them. The trial court accepted the Hochstetlers' post-trial assertion of the estoppel defense and entered a negative judgment on Farm Bureau's claim.

■ The facts as recited above do not support the trial court's conclusion that the affirmative defense of estoppel was tried with the implied consent of Farm Bureau. The Hochstetlers consistently argued that the "Roaster Production Agreement" made them agents of J. J. Poultry. Farm Bureau did not know nor could it have ascertained that the evidence relevant to the Hochstetlers' agency defense would be used to prove a defense that was neither pleaded nor discussed during trial. Implied consent to trial of an unpleaded defense may not be deduced merely because evidence relevant to a properly pleaded defense inferentially suggests a defense not within the pleadings. In *Aldon Builders, Inc. v. Kurland* (1972), 152 Ind.App. 570, 284 N.E.2d 826, this Court stated:

"'... [F]ailure to object is not the only requirement necessary to impliedly litigate a new issue. Both parties to the proceedings must litigate the new issue; and the evidence to support the introduction of a new issue cannot be adduced under cover of asking questions about an already pleaded issue. *Kaye v. Smitherman*, 225 F.2d 583 (10th Cir. 1955); *Hall v. National Supply Co.*, 270 F.2d 379 (5th Cir. 1959); *Gallon v. Lloyd-Thomas Co.*, 264 F.2d 821 (8th Cir. 1959).'"

152 Ind.App. at 580, 284 N.E.2d at 832, *quoting Hacker v. Review Board of Indiana Employment Security Division* (1971), 149

Ind.App. 223, 230, 271 N.E.2d 191, 195. The leading authorities on Rule 15(b) of the Federal Rules of Civil Procedure, which is identical to Indiana TR. 15(B) have reached similar conclusions in determining whether a party has given its implied consent to trial of unpleaded issues:

"[W]hen the evidence that is claimed to show that an issue was tried by consent is relevant to an issue already in the case, as well as to the one that is the subject matter of the amendment, and there was no indication at trial that the party who introduced the evidence was seeking to raise a new issue, the pleadings will not be deemed amended under the first portion of Rule 15(b). The reasoning behind this view is sound since if evidence is introduced to support basic issues that already have been pleaded, the opposing party may not be conscious "of its relevance to issues not raised by the pleadings unless that fact is specifically brought to his attention." (Footnote omitted.).

6 Wright & Miller, *Federal Practice and Procedure* § 1493, at 466–67 (1971).

"The purpose of an amendment to conform to proof is to bring the pleadings in line with the actual issues upon which the case was tried; therefore an amendment after judgment is not permissible which brings in some entirely extrinsic issue or changes the theory on which the case was actually tried, even though there is evidence in the record—introduced as relevant to some other issue—which would support the amendment. This principle is sound, since it cannot be fairly said that there is any implied consent to try an issue where the parties do not squarely recognize it as an issue in the trial...." (Footnotes omitted.).

3 Moore, *Moore's Federal Practice* ¶ 15.-13[2], at 15–171 to 15–172 (1980). Other jurisdictions clearly support the position on implied consent under TR. 15(B) taken by Indiana in *Kurland* and the authorities cited above. *See, Gonzales v. United States* (9th Cir. 1979), 589 F.2d 465; *Cook v. City of Price, Carbon County, Utah* (10th Cir. 1977), 566 F.2d 699; *Browning Debenture Hold-*ers' *Comm. v. Dasa Corp.* (2d Cir. 1977), 560 F.2d 1078; *International Harvester Credit Corp. v. East Coast Truck* (5th Cir. 1977), 547 F.2d 888; *MBI Motor Co., Inc. v. Lotus/East, Inc.* (6th Cir. 1974), 506 F.2d 709; *Smith v. Smith* (1975), 235 Ga. 109, 218 S.E.2d 843; *M. K. Transport, Inc. v. Grover* (1980), 101 Idaho 345, 612 P.2d 1192; *Lynch v. Cheney* (1977), 98 Idaho 238, 561 P.2d 380; *Eudy v. Eudy* (1975), 288 N.C. 71, 215 S.E.2d 782; *Kenney v. Providence Gas Co.*, (1977), 118 R.I. 134, 372 A.2d 510.

The Hochstetlers' reliance on TR. 15(B) is inappropriate. From the authorities discussed above, it is evident that implied consent will be found only where the opposing party knew or should have known that an unpleaded issue was being presented at trial. Trial Rule 15(B) does not require the opposing party to scrutinize every shred of evidence relevant to a pleaded issue to find allusions to unpleaded issues. Nor may TR. 15(B) be used as a post-trial pleading mechanism whereby a party may review the record and raise any unpleaded defense that the evidence might suggest. Trial Rule 15(B) was intended to permit amendment to the pleadings only when evidence on an unpleaded issue is "unequivocally clear" to the opposing party but is nevertheless admitted without objection. *Aldon Builders, supra*, 152 Ind.App. at 580, 284 N.E.2d at 832.

The Hochstetlers' intent to assert the estoppel defense was not "unequivocally clear." Farm Bureau was not afforded a fair opportunity to respond at trial to the Hochstetlers' post-trial assertion of the estoppel defense. Thus, we conclude that the trial court's entry of a negative judgment based on the Hochstetlers' estoppel defense was contrary to law.

The Hochstetlers contend that even if the trial court's decision cannot be sustained on the estoppel defense, there is sufficient evidence in the record to affirm based on the existence of a principal-agent relationship between J. J. Poultry and themselves. The trial court made no findings of fact or conclusions of law on the Hochstetlers'

agency defense even though evidence on the issue was presented by both parties. The trial court predicated its judgment solely on the existence of an estoppel. We are unable to conclude as a matter of law that an agency relationship existed because conflicting evidence was presented on the issue. Therefore, we cannot affirm the trial court's judgment on the basis of the existence of a principal-agent relationship.

Since the facts to otherwise establish liability were undisputed, we reverse and remand this action to the trial court for it to make findings of fact and conclusions of law on the Hochstetlers' agency defense. The trial court is to resolve this issue solely on the basis of the evidence already presented. If the trial court does not find the existence of a principal-agent relationship between J. J. Poultry and the Hochstetlers, then the trial court is instructed to enter judgment for Farm Bureau and assess damages accordingly.

Reversed and remanded with instructions.

HOFFMAN, P. J., and GARRARD, J., concur.