INDIANA STATE BOARD OF
EDUCATION, Appellant–
Respondent,

v.

BROWNSBURG COMMUNITY
SCHOOL CORPORATION, Board of
School Trustees, Appellee–Petitioner.

No. 32A05–0506–CV–317.

Court of Appeals of Indiana.

Feb. 24, 2006.

Steve Carter, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, for Appellant.

George T. Patton, Jr., Buren E. Jones, Bose McKinney & Evans LLP, Indianapolis, IN, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

The Indiana State Board of Education ("ISBE") appeals the trial court's denial of its Motion to Correct Errors and Vacate. Specifically, the ISBE contends that because it was unaware that the "preliminary hearing" in the matter would be its one and only chance to argue its case on the merits, the trial court abused its discretion by refusing to vacate its final order. Finding that the ISBE was not afforded the due process guarantees of notice and an opportunity to be heard, we reverse.

### Facts and Procedural History

On August 4, 2004, Catherine Johnson ("Johnson") met with Kathy Corbin ("Corbin"), superintendent of Brownsburg Community School Corporation ("Brownsburg"), and asked that her sons, Ta. and Tr. ("the students"), be allowed to enroll at Brownsburg on a part-time basis for the 2004–2005 school year—Ta. in band and Tr. in AP calculus and Madrigals.[1] Johnson planned to enroll the students mainly in home study correspondence courses, including classes through Brigham Young University. At the time of Johnson's request, Brownsburg had the following policy in place:

> The Superintendent or the Board will not grant approval per I.C. 20–8.1–3–17.3(b) for students from non-public, non-accredited, or non-approved schools including home educated students to enroll in less than six (6) credit generating courses unless an [Individualized Education Program] is in effect.[2]

Appellant's Br. p. 22; Appellant's App. p. 43. Because Johnson's proposed course of home study is not approved by the ISBE and because there was no individualized education program ("I.E.P.") in effect for the students, Corbin denied the requested part-time enrollment.[3]

The students appealed Corbin's denial of their request for part-time enrollment to the ISBE. On February 3, 2005, the ISBE, relying on the recommendation of the administrative law judge ("ALJ") it had assigned to the case, voted to reverse Corbin's decision and ordered Brownsburg to enroll the students on a part-time basis in the classes in which they sought enroll-

---

1. Johnson eventually withdrew her request to have Tr. enrolled in AP calculus.

2. The quoted policy appears in the "Brownsburg High School Guide to Course Selection Program Planning 2004–2005 Policies, Procedures, Course Description." Appellant's App. p. 43. A similar but extended version of the policy appears in the "Brownsburg High School Handbook and Calendar 2004–2005." *Id.*

3. " 'Individualized Education Program' means a written document, developed by the case conference committee, that describes how a student will access the general education curriculum and the special education and related services needed to participate in the educational environment. The required components of an individualized education program are contained in 511 IAC 7–27–6." Ind. Admin. Code tit. 511, r. 7–17–44 (2001).

ment. On February 4, Brownsburg filed its Verified Petition for Judicial Review of an Agency Action and Stay of Order Pending Final Determination ("Petition") with the trial court. Attached as exhibits to the Petition were copies of the ISBE ALJ's recommended orders, Brownsburg's objections to those orders, and Brownsburg's published policy on student enrollment. In the Petition, Brownsburg requested a stay of the agency action and an expedited hearing on judicial review of the matter. That same day, the trial court, having determined that a reasonable probability existed that the ISBE's action was invalid or illegal, granted the stay and set the matter for a "preliminary hearing" on February 15. Appellant's App. p. 90. The chronological case summary ("CCS") indicates that the ISBE was served with the summons and petition on February 8 and the Attorney General was served around the same time.[4] The answer to the petition was originally due on February 28, but the ISBE asked for and received an extension through March 30.

The preliminary hearing was held as scheduled on February 15. At the beginning of the hearing, when the court asked deputy attorney general Chad Duran ("Duran"), the ISBE's attorney, what the status of the case was, he responded, "The Indiana State Board of Education opposes the stay, uh Your Honor." Tr. p. 7. Later, Duran stated, "Now with regards to the stay, ultimately the stay is [the] applicable remedy uh and just to prevent undue hardship on behalf of the parties. I don't believe in this instance that, that Brownsburg School Corporation can make any significant showing uh of undue hardship." *Id.* at 11. The court then asked Buren

Jones ("Jones"), Brownsburg's attorney, what "supports you obtaining uh an injunction," and Jones responded, "the court only need find by the petition and the arguments here today that there's a reasonable uh probability that the [ISBE's] order [is] invalid or illegal[.]" *Id.* at 13.

During his closing, Duran made the following comments:

> Ultimately, we have a situation here where we are attempting to harmonize the Indiana State Constitution with the relevant law that Mr. Jones cited.... That's the ultimate issue to be decided once this matter is fully briefed it goes through the process.... The school corporation is certainly ready willing and able to absorb two additional students into its system on a part time bases [sic] so let's keep the order of the Indiana State Board of Education in place while we determine these important Constitutional issues.

*Id.* at 20–21 (interjections omitted). In his closing, Jones stated, in pertinent part:

> [T]he choice to home school is theirs but with as with [sic] every choice comes consequences and uh because they voluntarily withdrew by granting the stay you're not going to be taking anything away from them that they already have.... Alright, if you don't grant the stay, if the court doesn't grant the stay we'll not only have these two [students] but we'll have others that will place a burden on the school.... We may have to hire additional staff to teach these children. If we hire additional staff and then we ultimately prevail which we ex-

---

4. The ISBE writes in its brief that it was served on February 11 and that the Attorney General was served on February 14. However, a review of the CCS reveals that these are the dates on which the certified mail receipts were returned. It appears that the ISBE actually signed for the summons and petition on February 8. The date on which the Attorney General's office signed is unclear. Appellant's App. p. 2.

pect that we will, we can't just automatic [sic] fire that additional staff[.]

*Id.* at 22–23. At the end of the hearing, the trial court invited the parties to submit briefs of 250 words or less, but both declined.

Two days after the hearing, on February 17, the trial court entered its Order After Preliminary Hearing, which provided, in pertinent part:

[I]t is hereby ordered that the Findings of Fact, Conclusions of Law, and Recommended Order entered by Valerie Hall, Hearing Examiner of the Indiana State Board of Education, on 16 December, 2004, under cases number 0408012B and A are vacated because they are contrary to the clear law set out by our legislature, overbroad, arbitrary and capricious, and an abuse of discretion[.] [5]

*Id.* at 15.

On February 28, Brownsburg filed with the trial court a Notice of Filing of the Agency Record. Attached to this filing was that portion of the agency record that had been provided to Brownsburg by the ISBE as of that date. The filing did not include portions of the record that had been preserved without transcript and delivered to Brownsburg via audio cassette tape and video cassette tape. That same day, the ISBE filed a Motion to Correct Errors and Vacate. The motion stated: "It was counsel's impression that the hear-

ing set for February 15, 2005 was set by the Court to address [Brownsburg's] request to stay the agency order pending final determination[.]" Appellant's App. p. 86–87. The ISBE requested that the trial court

correct errors, vacate its Order entered herein on February 17, 2005, permit the [ISBE] to file an answer and affirmative defenses or other responsive pleading, provide [Brownsburg] with an opportunity to file the original or certified copy of the record of the administrative hearing below, the subject of the instant judicial review, and set a briefing schedule in which all parties are provided with the opportunity to submit dispositive motions and set forth their legal arguments in supporting briefs in which all parties can cite to the administrative record below in support of their position.

*Id.* at 87–88.

The ISBE filed its answer to Brownsburg's Petition on March 10. Then, because the trial court had failed to take any action on the ISBE's Motion to Correct Errors and Vacate within forty-five days, the motion was deemed denied, pursuant to Indiana Rule of Trial Procedure 53.3. On April 18, having received the remaining portions of the record from the ISBE, Brownsburg filed another Notice of Filing of the Agency Record.[6] Thereafter, the

---

**5.** As the ISBE notes in its brief, the trial court's order did not explicitly vacate the final decision of the ISBE. Rather, it purports to vacate only the findings, conclusions, and recommended order of the assigned ALJ. However, the ISBE adopted the ALJ's findings, conclusions, and recommended order in coming to its final decision, and the parties on appeal agree that the trial court's order was meant to vacate the ISBE's final decision, not just the ALJ's recommendation.

**6.** While the full agency record had not been filed by the time the trial court issued its

order, Brownsburg did file the record within the time permitted by Indiana Code § 4-21.5-5-13, including two thirty-day extensions granted by the trial court. *See* Appellee's App. p. 202–205, 226–229. As such, this case is distinguishable from *Indiana State Board of Education v. Brownsburg Community School Corp.*, 813 N.E.2d 330 (Ind.Ct.App.2004), in which this Court found that the trial court did not have jurisdiction to rule on a petition for judicial review because the petitioner failed to either file the agency record or request an extension of time within the statutory time period. Indeed, the ISBE does not claim that

ISBE filed its notice of appeal from both the trial court's Order After Preliminary Hearing and its denial of ISBE's motion to correct error, and the trial court entered an order indicating that it would take no further action in the case pending this appeal.

### Discussion and Decision

■ The ISBE contends that the trial court abused its discretion by failing to grant the ISBE's motion to correct error. Specifically, the ISBE argues that the trial court should have granted its motion to correct error because it believed that the February 15 hearing concerned the continuation of the previously granted stay and because "the premature decision of the trial court is contrary to the requirements of [the Administrative Orders and Procedures Act] and fundamental notions of due process[.]" Appellant's Br. p. 5. We agree that the requirements of due process were not met in this case.

■ We begin by clarifying the questions that are not presented by this appeal. We will not address the propriety of (1) the ALJ's disposition of this case or (2) the ISBE's affirmation of the ALJ's decision. Rather, our focus is on whether the ISBE was afforded adequate notice and a full and fair opportunity to litigate the issue presented on judicial review. This question comes to us as a denial of a motion to correct error. We review a trial court's decision to deny a motion to correct error for an abuse of discretion, and reversal will only occur when the trial court's decision was against the logic and effect of the facts and circumstances before it, together with the inferences that can be drawn therefrom. *Hockema v. J.S.*, 832 N.E.2d 537, 541 (Ind.Ct.App.2005), *reh'g denied; Mar-*

*tin v. State*, 784 N.E.2d 997, 1009 (Ind.Ct. App.2003), *reh'g denied.*

■ The ISBE argues that it was denied due process because it did not have a full and fair opportunity to challenge Brownsburg's Petition. Generally stated, due process requires notice, an opportunity to be heard, and an opportunity to confront witnesses. *In re M.L.K.*, 751 N.E.2d 293, 295–296 (Ind.Ct.App.2001). The notice provided must be reasonably calculated, under all the circumstances, to afford the interested parties an opportunity to present their objections. *Id.* at 296. "Such notice must reasonably convey the required information to the affected party, must afford a reasonable time for that party to respond, and is constitutionally adequate when the practicalities and peculiarities of the case are reasonably met." *Id.*

This Court addressed a similar due process argument in *In re M.L.K.*, 751 N.E.2d 293 (Ind.Ct.App.2001). In that case, parents received notice that the trial court would hold a hearing regarding the State's request to terminate the wardship of their child. Another issue raised at the hearing was the parents' obligation to reimburse the State for the amounts it had expended on the child's behalf during her wardship. After the hearing, the trial court entered an order terminating the wardship and directing the parents to reimburse the State for over $21,000.00. The parents appealed, arguing that their due process rights were violated because the notice of the wardship termination hearing that they received did not state that the subject of reimbursement of the State's expenses would be litigated.

the trial court did not have jurisdiction over Brownsburg's Petition at the time of its rul-

ing.

■ On appeal, we noted that the resolution of the wardship issue had little real impact on the parents because the apparent reason for the termination was the child's emancipation by marriage. *Id.* at 296. Under those circumstances, we held, the notice of the wardship hearing would not give a reasonable person actual notice that the issue of reimbursement of expenses would be litigated at the hearing, as required by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* We concluded:

> A party is entitled to some notice that an issue is before the court which has not been pleaded or has not been agreed to in a pre-trial order. This is especially true where the new issue is not unequivocally clear by the evidence being submitted. *This is not being technical. This is being fair. A party should be given an opportunity to meet the issues which the court is considering.*

*Id.* at 296–97 (quoting *Aldon Builders, Inc. v. Kurland,* 152 Ind.App. 570, 580, 284 N.E.2d 826, 832 (1972)) (emphasis added). *See also Stephens v. Kemp,* 469 U.S. 1043, 1055, 105 S.Ct. 530, 83 L.Ed.2d 417 (1984) (Brennan, J., dissenting) ("Due process of law . . . does not allow a hearing to be held . . . without giving [petitioners] timely notice, in advance of the hearing, of the specific issues that they must meet.") (quoting *In re Gault,* 387 U.S. 1, 33–34, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)) (alterations in original); *Baughman v. State,* 777 N.E.2d 1175, 1177 (Ind.Ct.App.2002) (holding that party ordered to pay discovery sanctions was denied opportunity to be heard on that issue where only subject of hearing was motion to suppress).

In the instant case, while the ISBE was aware that the trial court would ultimately decide the propriety of the ISBE's decision in the students' case, it had no reason to know or believe that the February 15 hearing would be its only opportunity to be heard on the merits of the judicial review proceeding. First and most importantly, the ISBE was notified on February 8 that a "preliminary hearing" would be held in the matter on February 15. As a simple matter of word usage, a "preliminary hearing" is necessarily followed by a later hearing. It is unreasonable for the ISBE to have expected that the preliminary hearing would be its last, and only, chance to make its case.

Furthermore, other considerations support the ISBE's contention that it was not on notice that the February 15 hearing would be the final hearing on the merits of Brownsburg's Petition. First, when the ISBE was served with notice of the hearing, only seven days remained before the hearing was to be held. Thus, it had only seven days to prepare for what turned out to be the final hearing on Brownsburg's Petition. Second, at the time of the hearing, the ISBE had not yet filed its answer, which was not due until February 28, thirteen days after the hearing. Third, the trial court did not have the full agency record, which was not due to be filed until at least nineteen days after the hearing. *See* Ind.Code § 4–21.5–5–13. With only one week to prepare, having made no filings in response to Brownsburg's Petition or in support of its legal position, and knowing that the trial court did not yet have the full agency record available for its review, it cannot be said that the ISBE received reasonable notice of the nature of the February 15 hearing.[7]

---

7. The uncertain status of the case is reflected in the trial court's CCS entry of February 23, 2003, which provides: "Court notes that an order of 17 Feb. 2005 the court vacated the hearing and orders the case returned to the Dept. of Education. Attorneys are ordered to confer and notify the Court in writing the

Finally, statements made by both parties and the trial court during the hearing support the ISBE's argument that the stay was the subject of the hearing. When asked what the status of the case was, Duran, the ISBE's attorney, stated, "The Indiana State Board of Education opposes the stay, uh Your Honor." Tr. p. 7. Later, Duran stated, "Now with regards to the stay, ultimately the stay is [the] applicable remedy uh and just to prevent undue hardship on behalf of the parties. I don't believe in this instance that, that Brownsburg School Corporation can make any significant showing uh of undue hardship." *Id.* at 11. The court asked Jones, Brownsburg's attorney, what "supports you obtaining uh an injunction[?]" *Id.* at 12. Jones responded, "the court only need find by the petition and the arguments here today that there's a reasonable uh probability that the [ISBE's] order [is] invalid or illegal[.]" *Id.* at 13. Jones' response relates to the standard for the issuance of a stay in a judicial review proceeding. *See* Ind.Code § 4-21.5-5-9.

In closing, Duran stated, in pertinent part: "That's the ultimate issue to be decided *once this matter is fully briefed it goes through the process* ... [L]ets's keep the order of the Indiana State Board of Education in place *while we determine these important Constitutional issues.*" *Id.* at 20-21 (emphases added) (interjections omitted). Likewise, Jones remarked, in pertinent part:

> [B]y granting the stay you're not going to be taking anything away from them

that they already have.... Alright, if you don't grant the stay, if .the court doesn't grant the stay we'll not only have these two [students] but we'll have others that will place a burden on the school.... If we hire additional staff *and then we ultimately prevail* ... we can't just automatic [sic] fire that additional staff[.]

*Id.* at 22-23 (emphasis added). These statements indicate that the parties believed that the purpose of the preliminary hearing was to determine whether the stay put in place by the trial court should continue. Indeed, the purpose of a stay in a judicial review situation is to "stay[ ] the action of the agency *pending decision by the court.*" I.C. § 4-21.5-5-9 (emphasis added).[8]

What we had here were two (or three) ships passing in the night. The trial court addressed both the stay and the merits of Brownsburg's Petition. To some extent, Brownsburg may have done the same thing. At the very least, however, it appears that Brownsburg expected there to be additional hearings. For its part, the ISBE clearly believed that the subject of the February 15 hearing was the stay. As we found above, this belief was reasonable. This court has recognized that a party should be given an opportunity to meet the issues that the court is considering. *In re M.L.K.,* 751 N.E.2d at 296-97 (quoting *Aldon Builders,* 152 Ind.App. at 580, 284 N.E.2d at 832). This is not being hypertechnical; this is being fair. *Id.*

status of this case within 30 days." Appellant's App. p. 2.

8. Brownsburg stresses that at the end of the hearing, the trial court offered the parties an opportunity to submit briefs of 250 words or less. Both parties declined. Brownsburg contends that because the ISBE failed to submit a brief on the merits when it had the

chance, it cannot now complain that it was not given adequate notice or afforded an opportunity to be heard. We disagree. The trial court did not specify the issue on which it was requesting briefs, and it was reasonable for the ISBE to decline the trial court's invitation, believing as it did that the issue at hand was the propriety of the stay.

Because the ISBE was not put on notice of the finality of the February 15 hearing, it was not afforded a full and fair opportunity to be heard.[9] As such, the requirements of due process have not been satisfied. Therefore, we reverse the trial court's denial of the ISBE's Motion to Correct Errors and Vacate and remand this matter with instructions to the trial court to conduct a judicial review proceeding in which the parties are given an opportunity to submit relevant documents and make substantive arguments on the merits of Brownsburg's Petition.

Reversed and remanded.

ROBB, J., and MATHIAS, J., concur.

---

9. Brownsburg points out in its brief on appeal that both its attorney and Johnson made "arguments on the merits" of Brownsburg's Petition during the February 15 hearing. Appellee's Br. p. 17. However, we agree with the ISBE that some discussion of the merits was inevitable because in deciding whether to issue or maintain a stay, the trial court must determine whether there is "a reasonable probability that the order or determination appealed from is invalid or illegal." *See* I.C. § 4–21.5–5–9. Such a determination requires some consideration of the merits of the dispute.