**FOR PUBLICATION**



ATTORNEY FOR APPELLANT:

**DAVID W. STONE IV**
Anderson, Indiana

ATTORNEY FOR APPELLEE:

**JOHN G. GARMAN**
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL E. HITCHENS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  48A05-1306-SC-302 |
| | ) | |
| COLLECTION SPECIALISTS, INC., | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable David A. Happe, Judge
Cause No. 48C04-1208-SC-4256

**March 11, 2014**

**OPINION - FOR PUBLICATION**

**PYLE, Judge**

Michael E. Hitchens ("Hitchens") appeals the small claims court's judgment in favor of Collection Specialists, Inc. ("Collection Specialists") concerning a bill for dental work.

We affirm.

## ISSUE

Whether the small claims court denied Hitchens the due process of law when it admitted a letter containing hearsay into evidence.

## FACTS

On July 19, 2010, Hitchens visited his periodontist, Doctor VanDorn ("Dr. VanDorn"), for a routine examination of his gums. While there, Hitchens mentioned that he had noticed that some of his teeth—numbers 5, 6, 7, and 8—were slightly loose. Hitchens had an implant bridge on those four teeth, and Dr. VanDorn recommended that Hitchens talk to his dentist, Doctor Bradley Laconi ("Dr. Laconi"), about recementing the bridge. Hitchens already had an appointment scheduled with Dr. Laconi for the following day concerning unrelated dental work, so the next day he discussed the matter of the loose teeth with Dr. Laconi and made a follow-up appointment for Dr. Laconi to look at the bridge on August 3, 2010.

On August 3, Dr. Laconi removed the bridge and discovered that the implant screws on two of the teeth were broken and needed to be replaced. Dr. Laconi said "I'll take care of this," and Hitchens responded "I think that's a good idea[.] [T]hey need to be fixed." (Tr. 31). Dr. Laconi and his office manager told Hitchens that they would not be

2

able to determine the cost of the repairs until they received a bill for the replacement parts. In spite of this uncertainty, Hitchens said that he wanted to continue with the procedure, so Dr. Laconi ordered the parts, and Hitchens returned to Dr. Laconi's office for appointments on August 19, 2010; August 24, 2010; September 23, 2010; and September 27, 2010.

After completing the dental work, Dr. Laconi filed insurance claims on Hitchens' behalf and received payment for the first claim on December 16, 2010. Hitchens reached the cap on his insurance policy at that point, and Dr. Laconi sent Hitchens a bill for the remainder, which totaled $3,440.00. Hitchens did not pay the bill or contact Dr. Laconi to dispute it. In attempts to receive payment, Dr. Laconi's office contacted Hitchens by phone and through mail, but did not receive a response. On May 25, 2012, Dr. Laconi assigned the debt to Collection Specialists, a debt collection agency. Collection Specialists sent Hitchens a letter on August 8, 2012, notifying him that he had thirty days to dispute the debt. At that point, Hitchens did dispute the debt, and, on August 20, 2012, Collection Specialists filed a claim against him in the small claims court.

On April 26, 2013, the small claims court held a bench trial. During the trial, Collection Specialists offered into evidence a letter from Dr. Laconi in which he described his perspective of events. Specifically, Dr. Laconi recounted that he had told Hitchens that he would not know how much the procedure would cost until he received a bill for the replacement screws and bridge. He also wrote that Hitchens "was very aware of his treatment plan and was very willing to have it completed. He had [six (6)] appointments with us before the work was completed and never once stated he was

3

unhappy with the treatment he received." (Ex. 4). Hitchens objected to the admission of the letter, arguing that it was essentially unsworn testimony that was not subject to cross-examination. The small claims court overruled the objection, citing the nature of small claims trials, which favor speedy resolution over rules of evidence or procedure. Hitchens next testified in his defense and contradicted Dr. Laconi's letter. He stated that he did not realize he would be charged for the repair because he thought that Dr. Laconi had broken the screws while attempting to remove the bridge. (Tr. 31). He also testified that if he had known the repairs would cost so much, he would not have gone through with them.

At the conclusion of the trial, the court entered a judgment in favor of Collection Specialists. On May 21, 2013, Hitchens filed a motion to correct errors in which he argued that the small claims court had denied him due process when it admitted Dr. Laconi's unsworn letter because he did not have an opportunity to cross-examine Dr. Laconi. Then, on May 22, 2013, the small claims court denied Hitchens' motion to correct errors. He now appeals. We will provide additional facts as necessary.

### DECISION

As a preliminary matter, we note that Collection Specialists has not filed a brief. When an appellee does not file a brief, we will not undertake to develop an argument on the appellee's behalf, and may instead reverse upon the appellant's prima facie showing of reversible error. *Morton v. Ivacic*, 898 N.E.2d 1196, 1199 (Ind. 2008). Prima facie error in this context is defined as, "'at first sight, on first appearance, or on the face of it.'" *Id.* (quoting *Trinity Homes v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006)).

4

Hitchens argues again on appeal that the small claims court denied him due process. His argument essentially has two components: (1) that the trial court denied him due process when it admitted Dr. Laconi's unsworn letter because allowing Dr. Laconi to testify through a letter prevented him from being able to cross-examine Dr. Laconi; and (2) that the trial court denied him due process because its decision was based entirely on unsworn hearsay testimony. Hitchens does not clarify whether he is seeking protection under the Due Process Clause of the United States Constitution or the Indiana Constitution. Because he does not present a specific analysis pursuant to the Indiana Constitution, he has waived any state constitutional claims, and we must proceed under the United States Constitution. *See Turner v. Bd. of Aviation Comm'rs*, 743 N.E.2d 1153 (Ind. Ct. App. 2001), *trans. denied.*

According to the Fourteenth Amendment of the United States Constitution, no state may deprive a person of "life, liberty, or property, without due process of the law." U.S. Const. amend XIV, § 1. "'Generally stated, due process requires notice, an opportunity to be heard, and an opportunity to confront witnesses.'" *Morton*, 898 N.E.2d at 1199 (quoting *Ind. State Bd. of Educ. v. Brownsburg Cmty. School Corp.*, 842 N.E.2d 885, 889 (Ind. Ct. App. 2006)). However, we note that the nature of small claims trials is relevant here. Small claims trials are meant to be "informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law." Ind. Small Claims Rule 8(A). Accordingly, they are "not bound by the statutory provisions or rules of practice, procedure, pleadings, or evidence except provisions relating to privileged communications and offers of compromise." S.C. R. 8(A).

5

Hearsay evidence is admissible in small claims actions, and expeditious resolution is essential to the efficacy and attractiveness of the optional small claims process. *Fortner v. Farm Valley-Applewood Apartments*, 898 N.E.2d 393, 398 (Ind. Ct. App. 2008). In addition, we have previously held that a deferential standard of review is particularly appropriate for small claims actions. *Id.*

In his brief, Hitchens acknowledges that hearsay is admissible in small claims actions but argues that this evidentiary rule does not "trump the right to cross[-]examine a witness under oath . . . ." (Hitchen's Br. 5). In support of this contention, Hitchens cites two small claims court cases, *Lowry v. Lanning*, 712 N.E.2d 1000 (Ind. Ct. App. 1999), and *Graves v. American Express*, 669 N.Y.S.2d 463 (N.Y. App. Term 1997).[1] We do not find either of these cases on point.

*Lowry* was an Indiana small claims action between two sisters, Lowry and Lanning, concerning an outstanding loan debt that Lowry allegedly owed Lanning. *Lowry*, 712 N.E.2d at 1000. After Lanning testified during a bench trial before the small claims court, Lowry attempted to cross-examine her regarding the age of the loan. *Id.* at 1001. Instead of allowing Lowry to ask Lanning her questions, the trial court stated that it "disbelieve[d]" Lowry and entered judgment in favor of Lanning. *Id.* On appeal, this Court recognized the importance of the right to cross-examine witnesses and concluded that the trial court had abused its discretion by preventing Lowry from asking Lanning about the age of the loan. *Id.*

---

[1] Hitchens also cites to two other cases that are not small claims court cases. Because the standard for small claims actions is different from plenary actions and because the facts of the cases Hitchens cites are not analogous, we will not discuss them in detail.

In *Graves*, a New York small claims court prevented the defendant from cross-examining the plaintiff because the defendant did not have any witnesses for the plaintiff to likewise cross-examine.[2]  *Graves*, 669 N.Y.S.2d at 286.  On appeal, the New York Supreme Court, Appellate Term, held that the small claims court had erred in determining that a party's right to cross-examine a witness is contingent on also presenting witnesses.  *Id.*  Its reasoning was that due process includes "the basic right to cross-examine witnesses."  *Id.*

Neither of these cases is analogous to the case at hand because in each case the trial court prohibited cross-examination of an in-court witness in response to that witness's testimony.  Here, Dr. Laconi did not testify in court, and the small claims court did not expressly deny Hitchens a chance to cross-examine him.  Hitchens merely argues that, because the small claims court admitted a letter written by Dr. Laconi and Dr. Laconi was not in court for Hitchens to cross-examine, the small claims court inherently violated his due process right to cross-examination.  We do not find this argument persuasive.  Unlike *Lowry* and *Graves*, where the small claims courts expressly prohibited questioning, Hitchens could have subpoenaed Dr. Laconi as a witness himself.  Pursuant to Small Claims Rule 8(B), "[w]itnesses may be called and the court shall have the power to compel their attendance."  S.C. R. 8.  Hitchens argues that he did not know that Dr. Laconi would not be in court, but under Ind. Small Claims Rule 6, he could have

[2] We also recognize that, as this is a New York case, we are not bound by its precedent.  *Smith v. Beneficial Finance Co. of Indianapolis, Inc.*, 218 N.E.2d 921, 922 (Ind. Ct. App. 1966) ("Many courts turn to decisions of tribunals in other jurisdictions to aid them through analogy or interpretation, in deciding their own cases.  This practice is appropriate when there is a lack of authority in a court's own jurisdiction, but where authority exists, a court is bound to give it primary consideration.").

requested discovery and known whether Dr. Laconi would be in court.[3]  Regardless, the small claims court did not prevent Hitchens from subpoenaing Dr. Laconi once he realized Collection Specialists was not going to call the doctor as a witness.  Under these facts, we cannot conclude that the small claims court denied Hitchens due process.

In support of this conclusion, we note the Indiana Supreme Court's opinion in *Matusky v. Sheffield Square Apartments*, 654 N.E.2d 740 (Ind. 1995).  Although the Supreme Court did not directly address the issue of due process in *Matusky*, it upheld the trial court's admission of hearsay in the place of in-court testimony, thereby inherently implying that such a practice does not violate due process.  The Supreme Court's opinion is also dispositive as to Hitchens' argument that hearsay cannot be the sole evidence supporting a judgment.

In *Matusky*, the owners of an apartment complex filed a small claims action against a former tenant for damages to the apartment in excess of the security deposit the tenants had paid.  *Id*. at 741.  The tenants filed a counter-claim arguing that the apartment complex had failed to send them an itemized list of damages as required by law and, therefore, should have returned their security deposit.  *Id.*  At trial, the apartment complex introduced an affidavit from an employee in the complex's corporate parent's office in which the employee attested that she had mailed a list of damages to the tenant.  *Id.*  Based on this evidence, the trial court granted judgment in favor of the apartment complex.  *Id.*

---

[3] Small Claims Rule 6 provides that "[d]iscovery may be had in a manner generally pursuant to the rules governing any other civil action, but only upon the approval of the court and under such limitations as may be specified. . . ."  S.C. Rule 6.

On appeal to the Supreme Court, the tenants claimed that, although hearsay is permissible in a small claims action, a judgment may not be entirely based on hearsay evidence. *Id.* The Supreme Court disagreed, stating:

> [T]he whole point of having a separate small claims process is to provide a quick, less expensive alternative to a full-blown trial. It is precisely these goals which would be the most compromised by the accretion of procedural and evidentiary regulations, regardless of their merit, which is why the non-substantive rules applicable in small claims proceedings are few indeed.

*Id.* at 742. The Supreme Court also noted that:

> [t]he importance of limiting a fact-finder's exposure to suspect evidence increases with the importance of what is at stake. This interest is reflected in the jurisdictional limit placed on the small claims docket, which has the effect of directing parties with more substantial matters to the plenary docket, in which all of the full panoply of procedural protections pertain.

*Id.*

We find the Supreme Court's reasoning relevant here. Although Dr. Laconi's letter was the only evidence that there was an agreement between Dr. Laconi and Hitchens regarding the dental work, it was admissible hearsay evidence, and it was permissible for the small claims court to base its judgment on the letter. *See id.* We also note that, while the letter was unsworn, Dr. Laconi had signed it, and the witness who introduced the letter—James West ("West"), the supervisor of Collection Specialists' legal department—was under oath during the introduction. As part of his testimony, West clarified that in preparation for the small claims action, Collection Specialists "verif[ied] all the information" and "check[ed] with the doctor," among other steps. (Tr. 12). West also asked Dr. Laconi to "verify the services" through the letter. (Tr. 15).

9

In light of West's testimony and the Supreme Court's decision in *Matusky*, we find that the small claims court did not deny Hitchens due process by admitting Dr. Laconi's letter or by basing its judgment on the letter. In *Rzeszutek v. Beck*, 649 N.E.2d 673 (Ind. Ct. App. 1995), *trans. denied*, we faced a situation similar to *Matusky* in which an appellant challenged the small claims court's acceptance of unsworn hearsay evidence, as well as the court's judgment based exclusively on that evidence. In that case, the nature of the hearsay evidence the small claims court admitted was almost identical to the nature of the evidence the court admitted in the instant case. *See id.* at 675. It was an unsworn, but signed, document a witness who had not prepared the document presented under oath.[4] *Id.* On appeal, we wrote that the effect of re-writing the Small Claims Rules to provide that a judgment could not be based exclusively on hearsay evidence would "impose technical rules upon largely untrained litigants[,] completely thwarting the express purpose of providing an uncomplicated and simple method of resolution of issues in order to dispense speedy justice between the parties." *Id.* at 681. For the same reasons, we decline to impose such technical rules here, and we conclude that the trial court did not deny Hitchens due process.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.

---

[4] The witness did take part in preparing the document, but he testified at trial that the document as a whole was also prepared by the rest of his family and another woman named Lucy Rzeszutek ("Rzeszutek"), none of whom appear to have testified in court. *See Rzeszutek*, 649 N.E.2d at 675. The person who signed the list was Rzeszutek. *Id.*