## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 21 2019, 6:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Offices
Logansport, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| M.R.,<br>*Appellant-Respondent,*<br><br>v.<br><br>B.C.,<br>*Appellee-Petitioner* | February 21, 2019<br><br>Court of Appeals Case No.<br>18A-PO-2156<br><br>Appeal from the Cass Superior Court<br><br>The Honorable James Muehlhausen,<br>Judge<br><br>Trial Court Cause No.<br>09D01-1806-PO-54 |

**Crone, Judge.**

# Case Summary

M.R. appeals the trial court's entry of a protective order sought by B.C. He challenges the sufficiency of the evidence to support the issuance of the protective order, and he also asserts that the trial court abused its discretion in admitting certain hearsay evidence during the hearing. Finding the evidence sufficient and that any error in the admission of evidence was harmless, we affirm.

# Facts and Procedural History

B.C. and M.R. began dating and started cohabiting in 2004. In 2011, a court granted B.C. de facto custody of her two-year-old granddaughter, L.M. B.C., L.M., and M.R. lived together as a family for several years. Although L.M. was not related to M.R., she still referred to him as "grandpa." Tr. Vol. 2 at 16. B.C. and M.R. started experiencing relationship troubles, and sometime in 2017, B.C. moved out of the home, taking L.M. with her. The parties reconciled briefly in early 2018, and B.C. and L.M. moved back in with M.R. However, in May 2018, B.C. decided the relationship was over. She subsequently removed all her belongings from the home, and she and L.M. moved out. B.C. wished to have no more contact with M.R. and asked him to "leave [her] alone." *Id*. at 6. B.C. got married to another man in July 2018. This resulted in a lot of "animosity" between the former couple. *Id*. at 30.

Thereafter, M.R. attended several of L.M.'s softball games despite B.C.'s requests that he not do so. M.R. often spoke to or made inappropriate

comments to B.C., her husband, and L.M. This made B.C. upset. One time M.R. was driving by in his truck after the game, and B.C. heard him say something directed to nine-year-old L.M. about B.C. sleeping with multiple men. *Id.* at 8. On another occasion, M.R. waited in his truck for B.C. to leave the ballpark, and then he followed her car through town. On yet another occasion he approached B.C. and L.M. in the concession line. B.C. asked to be left alone, but M.R. followed them as they walked. B.C. felt unsafe, so she asked a male friend, who also happens to be a police officer, to escort her and L.M. to their car. *Id.* at 9. M.R. still followed and then stood behind B.C.'s car until the officer had to ask him to step out of the way so B.C. could leave. This caused a "very uncomfortable situation." *Id.* at 9.

[4] During this same period of time, M.R. mailed letters to B.C.'s home and place of employment, and he also called B.C. at work on one or two occasions to express his anger about the fact that she left him and married another man. M.R. called B.C.'s friends and several members of her family to talk about B.C., and he additionally called Child Protective Services on B.C.

[5] On June 14, 2018, B.C. filed a petition for a protective order against M.R. alleging that M.R. had committed stalking. Following a hearing held on August 10, 2018, the trial court entered its order granting B.C.'s request for a protective order. Specifically, the order provides:

> 1. [M.R] is hereby enjoined from threatening to commit or committing acts of domestic or family violence, stalking, or sex

offenses against [B.C.] and the following designated family or household members, if any;

2. [M.R.] is prohibited from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with [B.C.], except: [M.R.] is allowed to visit child, [L.M.], at the ballpark. [M.R.] is allowed to visit the same church, The Church of the Nazarene, but will have no communication with [B.C.].

Appealed Order at 2. This appeal ensued.

## Discussion and Decision

We begin by noting that B.C. has not filed an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing arguments for the appellee, and we apply a less stringent standard of review. *Jenkins v. Jenkins*, 17 N.E.3d 350, 351 (Ind. Ct. App. 2014). Thus, we may reverse if the appellant establishes prima facie error, which is error at first sight, on first appearance, or on the face of it. *Id*. at 351-52. This rule relieves us of the burden of controverting arguments advanced in favor of reversal where that burden properly rests with the appellee. *Id*. at 352. In any event, we are still obligated to correctly apply the law to the facts in the record in order to determine whether reversal is required. *Id*.

Pursuant to the Indiana Civil Protection Order Act ("CPOA"), "[a] person who is or has been a victim of domestic or family violence may file a petition for an order for protection[.]" Ind. Code § 34-26-5-2(a). A finding that domestic violence has occurred sufficient to justify the issuance of a protective order

means that a respondent represents a credible threat to the safety of a petitioner or a member of the petitioner's household. Ind. Code § 34-26-5-9(f). The definition of "domestic or family violence" includes stalking as defined in Indiana Code Section 35-45-10-1. Ind. Code § 34-6-2-34.5

[8] To obtain an order of protection, the petitioner must establish at least one of the allegations in the petition by a preponderance of the evidence. *A.S. v. T.H.*, 920 N.E.2d 803, 806 (Ind. Ct. App. 2010). The CPOA authorizes issuance of an order for protection where a petitioner shows stalking occurred, regardless of whether the stalker is a stranger, or a family or household member of the victim. *Parkhurst v. Van Winkle*, 786 N.E.2d 1159, 1161-62 (Ind. Ct. App. 2003) (citing Ind. Code § 34-6-4-34.5).

## Section 1 – Sufficient evidence supports the trial court's issuance of a protective order.

[9] M.R. asserts that the evidence was insufficient to support the trial court's grant of B.C.'s request for a protective order. When considering the sufficiency of the evidence supporting a decision to issue a protective order, we do not reweigh the evidence or judge the credibility of witnesses. *A.G. v. P.G.*, 974 N.E.2d 598, 598 (Ind. Ct. App. 2012). We look only to the evidence of probative value and reasonable inferences that support the trial court's judgment. *Id.*

[10] Here, B.C. was required to establish, by a preponderance of the evidence, that M.R. committed stalking. "Stalking" is defined in relevant part as "a knowing or intentional course of conduct involving repeated or continuing harassment of

another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." Ind. Code § 35-45-10-1. "[H]arassment" is defined as "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotion distress." Ind. Code § 35-45-10-2. "[T]he term 'repeated' in Indiana's anti-stalking law means 'more than once.'" *Johnson v. State*, 721 N.E.2d 327, 332-33 (Ind. Ct. App. 1999), *trans. denied* (2000).

[11] B.C. testified, and M.R. admitted that, on multiple occasions after the parties ended their relationship, he attended nine-year-old L.M.'s softball games despite B.C.'s requests that he not do so. B.C. stated that each time, M.R. engaged in behavior that made B.C. feel "upset" and "uncomfortable." Tr. Vol. 2 at 7. One time he made an inappropriate sexual comment about B.C. to L.M. Another time, M.R. waited in his truck for B.C. to leave the ballpark and then followed her car through town. Yet another time, M.R. confronted B.C. in line at the concession stand and then started following her as she walked to her car. As a result, B.C. felt unsafe and was compelled to ask a police officer friend for help. B.C. also testified that M.R. mailed multiple angry letters to her home and place of employment, telephoned her at work on two occasions, and contacted her family and friends. B.C. stated that M.R. simply refused to "leave [her] alone[,]" and she felt "threatened because [M.R.] has shown anger" toward her. *Id*. at 9, 37.

[12] B.C.'s testimony is sufficient to establish by a preponderance of the evidence that M.R. engaged in a knowing or intentional course of conduct involving repeated or continuing harassment of B.C. that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually caused B.C. to feel terrorized, frightened, intimidated, or threatened. The trial court heard the testimony and observed witness demeanor; M.R.'s arguments on appeal are merely requests for us to reweigh the evidence and reassess witness credibility, and we cannot. We agree with the trial court that, although M.R.'s behavior was not overly "egregious," *id.* at 42, B.C. presented sufficient evidence of stalking to support the issuance of a protective order. M.R. has not established prima facie error.

## Section 2 – Any error in the admission of evidence was harmless.

[13] M.R. maintains that the trial court abused its discretion in admitting certain hearsay evidence during the hearing.[1] Specifically, he argues that, over his objections, the trial court improperly allowed B.C. to testify regarding statements made by L.M. about how L.M. felt about M.R.[2] Our standard of review of a trial court's admission of evidence is an abuse of discretion. *In re Des.B.*, 2 N.E.3d 828, 834 (Ind. Ct. App. 2014). An abuse of discretion occurs if

---

[1] Hearsay is defined as "a statement that: (1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c).

[2] We note that B.C. appeared pro se at the hearing, and the trial court, in its discretion, allowed her considerable procedural leeway in the presentation of her case.

the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* However, it is well established that errors in the admission of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party. *Id.* "To determine whether the admission of evidence affected a party's substantial rights, we assess the probable impact of the evidence upon the finder of fact." *Id.*

[14] Upon review of the record, we conclude that any error in the admission of the hearsay evidence in question was harmless. In issuing the protective order, the trial court focused on M.R.'s harassment of B.C., and how that caused her to feel intimidated and threatened. The trial court made it abundantly clear that the order is intended to protect B.C., and not L.M., from M.R. Indeed, although the order prohibits M.R. from contacting or communicating with B.C., the language of the order permits M.R. some contact with L.M. Accordingly, we are confident that B.C.'s testimony regarding L.M.'s statements did not impact the trial court's decision to issue the protective order in this case, and therefore, any erroneous admission of evidence did not affect M.R.'s substantial rights. The trial court's protective order is affirmed.

[15] Affirmed.

Vaidik, C.J., concurs.

Mathias, J., concurs in result with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| M.R., *Appellant-Defendant,* v. B.C., *Appellee-Petitioner.* | Court of Appeals Case No. 18A-PO-2156 |

**Mathias, Judge, concurring in result.**

[16] I concur with the result in this case but write separately to comment on the admissibility of hearsay in civil protection order proceedings.

[17] First, I observe that due to serious and immediate concerns for his or her safety, a petitioner may request an *ex parte* order of protection. *See* Ind. Code § 34-26-5-9(f). Petitioners are also frequently unrepresented by counsel. For these reasons, we may reasonably assume that in *ex parte* proceedings courts frequently rely on hearsay to determine whether an *ex parte* protective order should be issued.

[18]     In addition, petitions for civil orders of protection may be heard in any court of record, including small claims courts.[3] *See* Ind. Code § 34-26-5-4. The rules of evidence generally do not apply to proceedings in small claims courts. Our court has specifically held that hearsay is admissible in protection order proceedings adjudicated in small claims court, and that the small claims court's judgment may be supported solely by hearsay evidence. *See Rzeszutek et al. v. Beck*, 649 N.E.2d 673, 681 (Ind. Ct. App. 1995), *trans. denied* (concluding that a protective order entered by small claims court could be based solely on hearsay evidence). *See also Matusky v. Sheffield Square Apartments,* 654 N.E.2d 740, 742 (Ind. 1995); *Hitchens v. Collection Specialists, Inc.*, 5 N.E.3d 418, 423 (Ind. Ct. App. 2014) (reaffirming the principle that hearsay is admissible in small claims proceedings).

[19]     However, where the petition for the protective order is filed in superior or circuit court, as is the case here, our court has held that a trial court errs when it grants a petition for an order of protection based on the petitioner's hearsay statements.[4] *See Barger v. Barger*, 887 N.E.2d 990, 993–94 (Ind. Ct. App. 2008). The *Barger* court also noted the "significant ramifications of an improperly granted protective order" including that violating a protective order is "punishable by confinement in jail, prison, and/or a fine." *See id.* (quoting Ind.

---

[3] Until July 1, 2018, the Marion County Small Claims court was not a court of record. *See* Ind. Code § 33-34-1-3.

[4] The Protection Order Deskbook instructs judges that the rules of evidence apply to protective order proceedings. Protection Order Deskbook, Indiana Judicial Center, p. 4-7 (Nov. 2010).

Code § 34-26-5-3)). It is notable that in rural counties, only superior and circuit courts are available for protective order petitions, whether or not the respective court(s) choose to hear them on their small claims dockets.

[20] In sum, hearsay may support the trial court's adjudication of a petition for an *ex parte* order of protection in general, and on a petition for a permanent order of protection when the petition is filed in small claims court. However, a party who files his or her petition in superior or circuit court must proceed under a different and more complex evidentiary standard. One evidentiary standard should apply in all protective order proceedings regardless of the judicial forum. I therefore urge our supreme court to address this inconsistency through a modification of applicable rules.