**FILED**

Apr 27 2016, 8:05 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEYS FOR APPELLANT | ATTORNEYS FOR APPELLEES |
|---|---|
| Kevin W. Betz | Gregory F. Zoeller |
| Courtney E. Endwright | Attorney General of Indiana |
| Betz + Blevins | |
| Indianapolis, Indiana | Frances Barrow |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

Molly A. Melton,

*Appellant-Plaintiff*,

v.

Indiana Athletic Trainers Board, David Craig, A.T., in his official and individual capacity, Larry Leverenz, A.T., in his official and individual capacity, Scott Lawrance, A.T. in his official and individual capacity, Jennifer Vansickle, in her official and individual capacity, John Miller, M.D., in his official and individual capacity, and John Knote, M.D., in his official and individual capacity, and the Indiana Professional Licensing Agency,

April 27, 2016

Court of Appeals Case No.
49A05-1508-CT-1123

Appeal from the Marion Superior Court

The Honorable Gary L. Miller, Judge

Trial Court Cause No.
49D03-1403-CT-6878

*Appellees-Defendants.*

**Brown, Judge.**

Molly A. Melton appeals orders of the trial court granting a motion to dismiss and a motion for judgment on the pleadings in favor of the Indiana Athletic Trainers Board (the "Board"), David Craig, A.T., Larry Leverenz, A.T., Scott Lawrance, A.T., Jennifer VanSickle, John Miller, M.D., John Knote, M.D., each in their individual and official capacities, and the Indiana Professional Licensing Agency (the "IPLA", and collectively with the Board and the other named parties, the "Appellees"). The motion was filed following the Board's decision finding Melton in default and ordering that her Indiana athletic training license be indefinitely suspended for a period of at least seven years. Melton raises a number of issues, one of which we find dispositive and revise and restate as whether the court erred in dismissing Melton's complaint filed under 42 U.S.C. § 1983 pursuant to Ind. Trial Rule 12(C). We reverse and remand.

## Facts and Procedural History

On August 2, 2012, Melton was hired by IU Health Paoli Hospital's Rehab and Sports Medicine Department as an athletic trainer. A few months later, she began a consensual sexual relationship with a patient, who was a nineteen-year-

old adult male high school student.[1] On May 10, 2013, the State, through the Indiana Professional Licensing Agency ("IPLA"), filed an administrative complaint before the Board against Melton alleging that she "engaged in a course of lewd or immoral conduct in connection with delivery of services to the public" and "engaged in sexual contact with an athlete in her care" in violation of Ind. Code § 25-1-9-4(a)(5) and -4(a)(11). Appellant's Appendix at 15. The allegations recited in the complaint caused Melton "a great deal of embarrassment and humiliation . . . ." *Id.*

[3] On September 17, 2013, the Board held a hearing on the matter, in which Melton received proper notice of the hearing. Due to the embarrassment she felt regarding the allegations, as well as the Deputy Attorney General's intention to display nude photographs she had exchanged with the student, she chose to send her attorney to appear on her behalf at the hearing and admit to the factual basis but not to admit to sanctions. The Board deemed the appearance by only Melton's counsel to be insufficient, and it issued a Notice of Proposed Default.

[4] On September 27, 2013, Melton filed a motion responding to and opposing the Notice of Proposed Default, in which she noted her reason for not appearing in person, including "the direct embarrassment or direct humiliation that would have been caused by such a hearing, particularly as Ms. Melton did not oppose

---

[1] In her brief Melton asserts that she was twenty-three years old at the time she was hired. Appellant's Brief at 6. However, the record does not contain a statement relating to her age.

the facts underlying this Complaint but only disputed the proposed punishment, admissions, and sanctions sought by the Board." *Id.* at 16. On November 20, 2013, Deputy Attorney General Amanda Elizondo ("DAG Elizondo") sent Melton's counsel an email "stating that a hearing would 'probably' be going forward," and then on January 16, 2014, DAG Elizondo emailed Melton's counsel "that the hearing was 'set for Tuesday.'" *Id.* at 16. The next day, Crystal Heard of the IPLA sent an email "which simply stated that '[t]he Default is on the agenda for January 21, 2014 at 10am.'" *Id.* Neither Melton nor her counsel received notice from the Board of a hearing.

[5] On the morning of January 21, 2014, the Board held the hearing and, on February 3, 2014, issued its Order stating that it had considered Melton's motion opposing the proposed default and that it found Melton in default by a vote of 5-0. Also by a vote of 5-0, the Board concluded that Melton violated Ind. Code § 25-1-9-4(a)(5), -4(a)(11), and it ordered that she be placed on indefinite suspension for at least seven years and that prior to petitioning for reinstatement she provide the Board proof of successful completion of a course related to ethical boundaries in a patient-practitioner relationship.

[6] On March 6, 2014, Melton filed her Verified Complaint and Petition for Review of Administrative Ruling (the "Complaint") in which she brought, in Count I, an action under 42 U.S.C. § 1983 that the Board's Order violated her federal constitutional rights, and, in Count II, she petitioned for review of the Board's Order under the Indiana Administrative Orders and Procedures Act (the "AOPA"). On April 28, 2014, the Appellees filed their Answer to

Complaint and Statement of Affirmative Defenses. That same day, the Appellees filed a Motion to Dismiss Petitioner's Verified Petition for Judicial Review of the January 21, 2014 Order Entered by the Board, seeking to dismiss Count II, because Melton "failed to file the agency record by April 7, 2014," which was thirty-two days after Melton filed her Complaint. *Id.* at 41. On July 1, 2014, the court held a hearing on the Appellees' motion and continued the hearing by agreement of the parties until after the Indiana Supreme Court ruled on "the issue of what needs to be filed in terms of the Agency record." July 1, 2014 Transcript at 2.

[7] On February 11, 2015, the Appellees filed their Renewed Motion to Dismiss Petition for Review seeking dismissal of Melton's petition for administrative review "[n]ow that the Supreme Court has decided unequivocally that a case must be dismissed when a party fails to file the agency record . . . ."[2] Appellant's Appendix at 80-81. That same day, the court granted the Appellees' motion with respect to Count II and "ordered that Ms. Melton's petition for judicial review is hereby **DISMISSED**." *Id.* at 9.

[8] On April 10, 2015, the Appellees filed their motion for judgment on the pleadings (the "12(C) Motion") seeking dismissal of Melton's § 1983 claim. On April 28, 2015, Melton filed her response in opposition to defendants' motion

---

[2] On November 13, 2014, the Indiana Supreme Court handed down *Teaching Our Posterity Success, Inc. v. Ind. Dep't of Educ.*, 20 N.E.3d 149 (Ind. 2014), as well as *First Am. Title Ins. Co. v. Robertson*, 19 N.E.3d 757 (Ind. 2014), *amended on reh'g by*, 27 N.E.3d 768 (Ind. 2015) which addressed issues relating to the filing of an agency record on petitions for judicial review.

for judgment on the pleadings, and on May 4, 2015, she requested a hearing. On May 12, 2015, the court rejected Melton's request for a hearing, in which the court wrote: "case was dismissed 2/2015."[3] *Id.* at 170. On June 4, 2015, Melton filed her Motion for Reconsideration and/or Motion to Clarify Court's Order on Plaintiff's Motion for Hearing on Defendants' Motion for Judgment on the Pleadings (the "Motion to Reconsider") which stated that the court "[had] yet to substantively rule on Ms. Melton's Section 1983 claim" and that the court's "February 2015 Order dismissed only Ms. Melton's petition for administrative review (not her Section 1983 claim)." *Id.* at 171. On June 8, 2015, the court granted Melton's Motion to Reconsider and set the matter for a hearing. On June 25, 2015, the court held a hearing, and on July 16, 2015, it entered a summary order granting the Appellees' 12(C) Motion and dismissing her Section 1983 claim.

## *Discussion*

[9]     The dispositive issue is whether the court erred in dismissing Melton's complaint filed under 42 U.S.C. § 1983 pursuant to Ind. Trial Rule 12(C). We review *de novo* a trial court's ruling on a Rule 12(C) motion for judgment on the pleadings. *Consol. Ins. Co. v. Nat'l Water Servs., LLC*, 994 N.E.2d 1192, 1196 (Ind. Ct. App. 2013) (citing *Murray v. City of Lawrenceburg*, 925 N.E.2d 728, 731

---

[3] The May 12, 2015 Order consisted of what appears to be a proposed order granting Melton's request for a hearing in which the court crossed out the word "GRANTING" in the title and wrote by hand: "Denied – case was dismissed 2/2015." Appellant's Appendix at 170.

(Ind. 2010)), *trans. denied*. We accept as true the well-pleaded material facts alleged in the complaint, and base our ruling solely on the pleadings. *Id.* A Rule 12(C) motion for judgment on the pleadings is to be granted "only where it is clear from the face of the complaint that under no circumstances could relief be granted." *Id.* (quoting *Murray*, 925 N.E.2d at 731 (quoting *Forte v. Connerwood Healthcare, Inc.*, 745 N.E.2d 796, 801 (Ind. 2001) (quoting *Culver-Union Twp. Ambulance Serv. v. Steindler*, 629 N.E.2d 1231, 1235 (Ind. 1994)))).

[10] When reviewing a Rule 12(C) motion, we may look only at the pleadings and any facts of which we may take judicial notice, with all well-pleaded material facts alleged in the complaint taken as admitted. *Id.* "The 'pleadings' consist of a complaint and an answer, a reply to any counterclaim, an answer to a cross-claim, a third-party complaint, and an answer to a third-party complaint." *Id.* "Pleadings" also consist of any written instruments attached to a pleading, pursuant to Ind. Trial Rule 9.2. *Id.*; *see also* Ind. Trial Rule 10(C) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

[11] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

[12] Section 1983 creates no substantive right of its own, but acts only as a vehicle to afford litigants a civil remedy for deprivation of their federal rights. *Myers v. Coats*, 966 N.E.2d 652, 657 (Ind. Ct. App. 2012) (citing *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807 (1994), *reh'g denied*). To prevail on a Section 1983 claim, "the plaintiff must show that (1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under the color of state law." *Id.* (citing *J.H. ex rel Higgin v. Johnson*, 346 F.3d 788, 791 (7th Cir. 2003), *reh'g and reh'g en banc denied*, *cert. denied*, 541 U.S. 975, 124 S. Ct. 1891 (2004)).

[13] The Fourteenth Amendment of the United States Constitution prohibits any state from depriving a person of life, liberty, or property without due process of law. Also, Article 1, Section 12 of the Indiana Constitution states that "[a]ll courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." Indiana courts have consistently construed Article 1, Section 12, also known as the due course of law provision, as analogous to the federal due process clause. *See, e.g.*, *Doe v. O'Connor*, 790 N.E.2d 985, 988 (Ind. 2003); *see also McIntosh v. Melroe Co.*, 729 N.E.2d 972, 976 (Ind. 2000).

"A due process claim requires the consideration of two factors: first, there must be the deprivation of a constitutionally protected property or liberty interest; and second, a determination of what procedural safeguards are then required." *Ross v. Ind. State Bd. of Nursing*, 790 N.E.2d 110, 120 (Ind. Ct. App. 2003); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S. Ct. 1487, 1493 (1985)) ("Once it is determined that the Due Process Clause applies, 'the question remains what process is due.'"). "The United States Supreme Court has defined constitutionally protected 'property' in this context as 'a legitimate claim of entitlement.'" *Bankhead v. Walker*, 846 N.E.2d 1048, 1053 (Ind. Ct. App. 2006) (quoting *Austin v. Vanderburgh Cnty. Sheriff Merit Comm'n*, 761 N.E.2d 875, 879 (Ind. Ct. App. 2002)). "The source of such entitlements is not to be found in the Constitution, but generally arises from a statute, ordinance, or contract." *Id.* "When protected property interests are implicated, the right to some kind of prior hearing is paramount." *Charnas v. Estate of Loizos*, 822 N.E.2d 181, 185 (Ind. Ct. App. 2005) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-570, 92 S. Ct. 2701, 2705 (1972)). "In determining whether due process requirements apply, courts look not to the weight but to the nature of the interest at stake." *Id.* (citing *Roth*, 408 U.S. at 571, 92 S. Ct. at 2706). This court has recognized that a person has a property interest in a license for employment issued to that person. *See Ross*, 790 N.E.2d at 120-121 (noting that "[w]hether one has a property interest in a license depends upon whether an individual has a legitimate claim of right to it, which in turn is dictated by the amount of discretion given to the licensing authority," that "there is not a great deal of discretion in the granting of a license," and that

"[a]ccordingly, Ross had a property interest in the nursing license issued to him"). We must therefore determine whether the amount of process Melton received is insufficient.

[15] Following the September 17, 2013 hearing at which her counsel appeared but Melton did not personally appear, the Board entered a Notice of Proposed Default. At the time of the September 17, 2013 and January 21, 2014 hearings, the relevant statute governing default or dismissal under the AOPA provided:

> (a) At any stage of a proceeding, if a party fails to:
>
>> (1) file a responsive pleading required by statute or rule;
>>
>> (2) attend or participate in a prehearing conference, hearing, or other stage of the proceeding; or
>>
>> (3) take action on a matter for a period of sixty (60) days, if the party is responsible for taking the action;
>
> the administrative law judge may serve upon all parties written notice of a proposed default or dismissal order, including a statement of the grounds.
>
> (b) Within seven (7) days after service of a proposed default or dismissal order, the party against whom it was issued may file a written motion requesting that the proposed default order not be imposed and stating the grounds relied upon. During the time within which a party may file a written motion under this subsection, the administrative law judge may adjourn the proceedings or conduct them without the participation of the party against whom a proposed default order was issued, having

due regard for the interest of justice and the orderly and prompt conduct of the proceedings.

(c)  If the party has failed to file a written motion under subsection (b), the administrative law judge shall issue the default or dismissal order.  If the party has filed a written motion under subsection (b), the administrative law judge may either enter the order or refuse to enter the order.

(d) After issuing a default order, the administrative law judge shall conduct any further proceedings necessary to complete the proceeding without the participation of the party in default and shall determine all issues in the adjudication, including those affecting the defaulting party.  The administrative law judge may conduct proceedings in accordance with section 23 of this chapter to resolve any issue of fact.

Ind. Code § 4-21.5-3-24 (West 2013) (subsequently amended by Pub. L. No. 72-2014, § 5 (eff. July 1, 2014)).[4]

[16]    Melton argues that in general a plaintiff can state a claim for deprivation of procedural due process "by 'show[ing] that state procedures as written do not supply basic due process or that state officials acted in an [sic] "random and unauthorized" fashion in depriving the plaintiff of his protected interest.'" Appellant's Brief at 20 (quoting *Strasburger v. Bd. of Educ.*, 143 F.3d 351, 358 (7th Cir. 1998), *reh'g and suggestion for reh'g en banc denied*, *cert. denied*, 525 U.S.

---

[4] Subsection (a)(2) of this statute, regarding a party's failure to attend or participate in a prehearing conference, hearing, or other stage of the proceeding, is found at subsection (a)(3) in the current version of the statute, after a new subsection (a)(1) was added to the statute effective July 1, 2014.

1069, 119 S. Ct. 800 (1999)). She maintains she was wrongly held in default in that her counsel attended the September 17, 2013 hearing, which is sufficient in any other forum. She argues that it is not clear that only her counsel's attendance at the September 17, 2013 hearing violated Ind. Code § 4-21.5-3-24(a)(2),[5] especially where she was not contesting the factual allegations and was concerned only with the sanction, and that this error is compounded where Ind. Code § 4-21.5-5-4(b)(2) precludes her from seeking judicial review of the entry of default.

[17] The Appellees argue that Melton received proper notice about the September 17, 2013 hearing, she simply decided not to attend, the Board issued its Notice of Proposed Default Order on September 20, 2013, which complied with and satisfied Ind. Code § 4-21.5-3-24(a), and that she has not alleged facts regarding this failure to appear that would entitle her to relief under Section 1983. They argue that to the extent Melton filed a motion responding to and opposing the Notice of Proposed Default, the Board was not persuaded by her arguments and entered the default. They assert that the dictate of Ind. Code § 4-21.5-3-24 that a board proceed without the participation of the party in default "makes sense" because it "ensures the prompt and efficient resolution of disputes," noting that the statute also permits a party to explain a failure to appear and, here, the Board was unpersuaded by Melton's reasons. Appellees' Brief at 23.

---

[5] Both briefs cite to the current version of the statute and particularly subparagraph Ind. Code § 4-21.5-3-24(a)(3), which is identical to Ind. Code § 4-21.5-3-24(a)(2) (West 2013) recited above. As we observed, the 2013 version of Ind. Code § 4-21.5-3-24 applied to the relevant time period in question.

They maintain that Melton has not explained how she could litigate the issue of sanctions without personally appearing before the Board and that the September 17, 2013 hearing "was her opportunity to provide her side of the story and present evidence of any mitigating circumstances." *Id.* at 21. Melton's response to this argument in her reply brief is that the Appellees do not explicitly argue that Ind. Code § 4-21.5-3-24(a)(2) required her presence at the hearing, and that she "could have (and did) oppose the 'Board's' 'sought' punishment through her attorney," noting again that she did not contest the facts and that her attorney could have presented argument regarding other similar cases regarding punishment. Appellant's Reply Brief at 10.

[18] To the extent this question requires us to interpret Ind. Code § 4-21.5-3-24, we note that we review an issue of statutory interpretation *de novo*. *Chrysler Grp., LLC v. Review Bd. of Ind. Dep't of Workforce Dev.*, 960 N.E.2d 118, 124 (Ind. 2012). "Clear and unambiguous statutes leave no room for judicial construction." *Basileh v. Alghusain*, 912 N.E.2d 814, 821 (Ind. 2009). But when a statute is susceptible to more than one interpretation it is deemed ambiguous and thus open to judicial construction. *Id.* If the statutory language is clear and unambiguous, we require only that the words and phrases it contains are given their plain, ordinary, and usual meanings to determine and implement the legislature's intent. *State v. Am. Family Voices, Inc.*, 898 N.E.2d 293, 297 (Ind. 2008), *reh'g denied*. If a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Fight Against Brownsburg Annexation v. Town of Brownsburg*,

32 N.E.3d 798, 806 (Ind. Ct. App. 2015). We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Hauck v. City of Indianapolis*, 17 N.E.3d 1007, 1015 (Ind. Ct. App. 2014), *trans. denied*. A statute should be examined as a whole, avoiding excessive reliance upon a strict literal meaning or the selective reading of individual words. *Mayes v. Second Injury Fund*, 888 N.E.2d 773, 776 (Ind. 2008).

[19] We find that the Board's decision to find Melton in default at the September 17, 2013 hearing was error. Although Ind. Code § 4-21.5-3-24(a) of that statute states that "[a]t any stage of a proceeding, if a *party* fails to" do certain things including attend a hearing, reviewing similar language in subsections (b) and (c) demonstrates that the statute's reference to "party" includes counsel. Ind. Code § 4-21.5-3-24(a) (emphasis added). Indeed, subsection (b) provides that "[w]ithin seven (7) days after service of a proposed default or dismissal order, the *party* against whom it was issued *may file a written motion* requesting that the proposed default order not be imposed," and subsection (c) provides that "[i]f the *party* has failed to file a written motion under subsection (b), the administrative law judge shall issue the default or dismissal order" and "[i]f the *party* has filed a written motion under subsection (b), the administrative law judge may either enter the order or refuse to enter the order." Ind. Code § 4-21.5-3-24(b), -24(c) (emphases added). Thus, construing the term "party" as contemplating only the petitioner is erroneous because, under such interpretation, it follows that in order for a party to comply with subsection (b) a party must personally file the motion opposing default, rather than counsel,

which we do not believe was the legislature's intent. Indeed, we observe that an appearance by counsel at an administrative hearing has been sufficient under Indiana law for decades. *See Foltz v. City of Indianapolis*, 234 Ind. 656, 685, 130 N.E.2d 650, 664 (Ind. 1955) ("If a party has been duly notified of a meeting for a hearing, and he fails to appear personally *or by counsel*, he waives any right to complain of the action taken, so long as it is within the authority of the administrative body holding the meeting.") (emphasis added).

[20] Also, Ind. Code § 4-21.5-3-24(a)(2) is not limited to participation in a hearing – a written notice of proposed default may also be served upon a "party" who does not participate in a prehearing conference. However, it is common for prehearing conferences under the AOPA to be conducted by counsel. *See, e.g.*, *Galvan v. Alliance Ems/Transport Loving Care, Inc., Respondent*, 2015 WL 10381762, at *2 (Ind. Civ. Rts. Com. August 28, 2015) (noting in its findings of fact that "[t]he ALJ advised the parties in the Notice of Initial Pre-Hearing Conference, "**CORPORATIONS** [] *must be represented by counsel* pursuant to Indiana law . . . . **A party who fails to attend or participate in a Pre-Hearing Conference, Hearing, or other later stage of the proceeding may be held in default or the matter may be dismissed**") (italics added); *In the Matter of the Petition of the Town of Huntertown, Ind.*, 2014 WL 4748688, at *1 (Ind. U.R.C. September 14, 2014) ("Counsel for Huntertown, Fort Wayne, the Indiana Office of Utility Consumer Counselor ('OUCC'), Twin Eagles and the Allen County Regional Water and Sewer District ('District') appeared and participated at the Prehearing Conference."); *In the Matter of: Comm'r, Ind. Dep't*

*of Env. Mgmt, Case No. 2010-19215-S v. Nicola Haddad, d/b/a Marathon Gas Station, Hobart, Lake Cnty., Ind.*, 2013 WL 9576700, at *2 (Ind. Off. Env. Adjud. November 14, 2013) ("Respondent Haddad's legal counsel appeared at the September 19, 2011 Prehearing Conference, and represented that the Station had new ownership, but requested additional time to submit leak detection information to IDEM."); *In the Matter of: Arvina Joyce Carlson d/b/a State Bonding d/b/a State Bonding Cal.*, 2010 WL 3466023, at *1 (Ind. Div. Sec. August 18, 2010) (noting that both parties at telephonic prehearing conference were represented by counsel). Indeed, the Board in a past decision has contemplated that appearance by counsel was sufficient. *See In the Matter of Kent Robert Lindsay*, 2005 ATB 0001, at 1 (Ind. A.T.B. November 15, 2006) ("Respondent failed to appear in person or by counsel.").

[21] We find that the Board erred in entering its Notice of Proposed Default.[6] The question we must address is whether such entry denied Melton her due process rights. Due process is not a technical conception with a fixed content unrelated to time, place and circumstances. *Wilson v. Bd. of Ind. Emp't Sec. Div.*, 270 Ind. 302, 309, 385 N.E.2d 438, 444 (1979) (citing *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S. Ct. 1743, 1748 (1961), *reh'g denied*), *cert. denied*, 444 U.S. 874, 100 S. Ct. 155 (1979). Rather, due process is a flexible concept which calls

---

[6] Regarding the Appellees' argument that Melton has not explained how she could litigate the issue of sanctions without personally appearing before the Board, we observe that, to the extent Melton's testimony may have been required in order to address a particular argument regarding sanctions raised by Melton's counsel at the hearing, the Board could have found that particular argument was waived due to her decision not to appear.

for such procedural protections as the particular situation demands. *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 902 (1976)). The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *McKinney v. McKinney*, 820 N.E.2d 682, 687 (Ind. Ct. App. 2005) (citing *Roth*, 408 U.S. at 569, 92 S. Ct. at 2705).

[22] "Generally stated, due process requires notice, an opportunity to be heard, and an opportunity to confront witnesses." *Morton v. Ivacic*, 898 N.E.2d 1196, 1199 (Ind. 2008) (quoting *Ind. State Bd. of Educ. v. Brownsburg Cmty. Sch. Corp.*, 842 N.E.2d 885, 889 (Ind. Ct. App. 2006)). "The 'opportunity to be heard' is a fundamental requirement of due process." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950)); *see also Mathews*, 424 U.S. at 333, 96 S. Ct. at 902 ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (internal quotations omitted). In order to determine the specific dictates of due process in a given situation, it is necessary to balance three distinct factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, along with the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. *Mitchell v. State*, 659 N.E.2d 112, 114 (Ind. 1995) (citing *Wilson*, 270 Ind. at 309, 385 N.E.2d at 444 (quoting

*Matthews*, 424 U.S. at 335, 96 S. Ct. at 903)).  As we review and balance these three interests first enunciated in *Mathews v. Eldridge*, we recognize that, "although due process is not dependent on the underlying facts of the particular case, it is nevertheless 'flexible and calls for such procedural protections as the particular situation demands.'"  *Lawson v. Marion Cnty. Office of Family & Children*, 835 N.E.2d 577, 580 (Ind. Ct. App. 2005) (quoting *Thompson v. Clark Cnty. Div. of Family & Children*, 791 N.E.2d 792, 795 (Ind. Ct. App. 2003), *trans. denied*).

[23] The failure to properly follow statutory requirements can lead to a violation of a person's procedural due process rights.  *See A.P. v. Porter Cnty. Office of Family and Children*, 734 N.E.2d 1107, 1117 (Ind. Ct. App. 2000) (holding that the failure of the Porter County Office of Family and Children to comply with statutes relating to Child in Need of Services and termination proceedings deprived the parents of their due process rights), *reh'g denied*, *trans. denied*.  In this case, the private interest affected by the official action, Melton's athletic trainer's license, is of paramount importance to Melton because it is required for her to pursue the work she had invested years preparing to perform.  Conversely, there is no apparent governmental interest that would justify a disregard of procedures set forth by the legislature; rather, those procedures must be followed, especially when such an important private interest is at stake.  Finally, the risk of an erroneous deprivation of Melton's interest in her athletic trainer's license through the Board's decision to enter the Order of Proposed Default is great because she was not entitled to *any* further process following the

entry. Also, under Ind. Code § 4-21.5-5-4(b)(2) a person who is in default under the AOPA has waived their right to seek judicial review.

[24] The Board's entry of the Notice of Proposed Default following the September 17, 2013 hearing, in which Melton's counsel appeared, deprived Melton of her opportunity to be heard "at a meaningful time and in a meaningful manner," which is the fundamental requirement of due process. *Mathews*, 424 U.S. at 333, 96 S. Ct. at 902. Under the circumstances, we must reverse the court's grant of the Appellees' 12(C) Motion dismissing Melton's Section 1983 claim, remand with instructions to vacate the Board's Order, and order the Board to provide Melton with an administrative hearing concerning the complaint filed against her Indiana athletic training license which comports with the dictates of due process.

## *Conclusion*

[25] For the foregoing reasons, we reverse the court's grant of the Appellees' 12(C) Motion dismissing Melton's Section 1983 claim and remand with instructions consistent with this opinion.

[26] Reversed and remanded.

Kirsch, J., and Mathias, J., concur.