## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 28 2020, 9:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jessie D. Cobb-Dennard
Sallee Law, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Zachary J. Stock
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>Ruth Morales,<br><br>*Appellant-Petitioner,*<br><br>v.<br><br>Rolando Morales,<br><br>*Appellee-Respondent.* | July 28, 2020<br><br>Court of Appeals Case No.<br>20A-DN-256<br><br>Appeal from the<br>Marion Superior Court<br><br>The Honorable<br>Marc T. Rothenberg, Judge<br>The Honorable<br>Kimberly Dean Mattingly,<br>Magistrate<br><br>Trial Court Cause No.<br>49D07-1808-DN-33242 |

**Kirsch, Judge.**

[1] Ruth Morales ("Wife") appeals the trial court's order dissolving her marriage to Rolando Morales ("Husband") and dividing the parties' marital property. Wife raises the following restated issues for our review:

> I.    Whether the trial court violated her right to procedural due process when it determined that she had expended her allotted time and prematurely terminated her case-in-chief and denied her right to cross examine Husband; and
>
> II.   Whether the trial court abused its discretion in its division of the marital property.

[2] We affirm.

## Facts and Procedural History

[3] Husband and Wife were married on September 14, 2013. Wife filed a petition for the dissolution of the marriage on August 22, 2018. *Appellant's App. Vol. 2* at 9. During the marriage, Husband worked consistently and earned income. *Tr. Vol. II* at 15-17. While the parties were married, Wife was not always employed, but she had worked for many years before the marriage and had accumulated retirement savings in the approximate amount of $69,000.00. *Id.* at 19-20, 30-31, 43. Wife also brought proceeds of a prior home sale into the marriage that the parties used for the down payment for their marital home in the amount of $30,000.00. *Appellant's App. Vol. 2* at 36; *Tr. Vol. II* at 31.

[4] During the marriage, Husband and Wife acquired various assets, including the marital home, vehicles, bank accounts, and miscellaneous personal property;

they also incurred liabilities, including a mortgage and credit card debt. *Appellant's App. Vol. 2* at 9-15; *Tr. Vol. II* at 2, 8-9, 11-14. The marital home was the most significant asset of the marriage with an appraised value of $217,000.00. *Appellant's App. Vol. 2* at 9; *Tr. Vol. II* at 8-9, 32-33; *Resp't's Ex.* A. The largest liability of the marriage was the mortgage, which was approximately $130,000.00. *Appellant's App. Vol. 2* at 9; *Tr. Vol. II* at 8, 33.

[5] On September 27, 2018, an Agreed Provisional Entry was issued, under which Wife maintained possession of the marital home while the dissolution was pending, and Husband paid "all expenses" related to the home, which included the mortgage, utilities, insurance, taxes, and necessary maintenance, upkeep and repairs. *Appellant's App. Vol. 2* at 21. While the dissolution was pending, Husband made payments totaling approximately $17,000.00 for mortgage, insurance, tax, and utility payments. *Id.* at 10; *Tr. Vol. II* at 34-35. In the Agreed Provisional Entry, Husband was required to pay $200.00 per month in maintenance to Wife. Husband made approximately $12,000.00 in maintenance payments while the dissolution was pending. *Appellant's App. Vol. 2* at 11, 23; *Tr. Vol. II* at 46-47.

[6] On September 12, 2019, the trial court set the parties' dissolution for a final hearing on November 1, 2019 from 9:00 a.m. to 11:30 a.m. *Appellant's App. Vol. 2* at 58. On November 1, 2019, the final hearing was held and began at approximately 9:00 a.m. *Id.* at 7; *Tr. Vol. II* at 2. The record stopped at 9:09 a.m. and did not resume until 10:25 am., resulting in an approximate seventy-

six minutes missing from the transcript. *Tr. Vol. II* at 5. At 10:25 a.m., the trial court stated:

> We are back on the record after some technical difficulties in Case Number 49DO71808DN33242. The things I said when I thought the record was running are that: I was able to verify that Wife has filed an updated financial declaration. [Wife's counsel] is more appropriately dressed so we'll proceed. [Husband's counsel] indicated he was not able to update Husband's financial declaration but insists that nothing has in fact changed since his [financial declaration] was filed in February. Counsel, there is an issue that the record apparently shut down maybe twenty minutes before we actually adjourned. Are you uncomfortable with that? Do you want to repeat some of Wife's testimony? I have detailed notes. I could state for the record what my notes have.

*Id*. Both parties agreed to rely upon the trial court's notes and to proceed. *Id*.

[7] From the trial court's comments, it is clear that Wife had presented some of her case-in-chief and had begun testifying before the record had stopped. After the record resumed, Wife continued to testify under direct examination. *Id.* at 5-6; *Pet'r's Exs*. 1, 2. After a few minutes of testimony and sometime before 11:00 a.m., the trial court cautioned Wife's counsel, "The time we lost is assessed to you. We still need to hear from [H]usband by the time we adjourn at 11:30. So, you need to pickup [sic] your pace." *Tr. Vol. II* at 24. A few moments later, the trial court again cautioned Wife's counsel, "[Y]our direct will end at 11:00 straight up." *Id*. at 26. After several more minutes of additional direct examination, the trial court interrupted Wife's counsel and stated, "That

concludes direct. [Husband's counsel] you may cross." *Id*. at 28. Wife's counsel did not make any objection at this time. *Id.*

[8] Husband's attorney then cross-examined Wife and began his case-in-chief by questioning Husband. *Id*. at 28-32. When Husband's counsel finished his direct examination of Husband, he concluded his questioning, and the following exchange occurred between the trial court and Wife's counsel:

> THE COURT: You may step down Sir, thank you.
>
> [COUNSEL]: Your Honor may I cross?
>
> THE COURT: No.
>
> [COUNSEL]: Why not?
>
> THE COURT: You used thirty minutes this morning on direct of your client. Not thirty minutes, we spend probably eight or ten working together on stipulations and the lack of [financial declarations]. We came back just after ten, you went until 11 with direct of your client. We were set for two and a half hours and you used ninety minutes of that on direct of your client. You can't use more than half the time and then expect to be able to use [Husband's counsel's] time. We're now past our allotted time....
>
> [COUNSEL]: I'm entitled to cross-examine the witness, Your Honor.
>
> THE COURT: No Ma'am, you're not.

[COUNSEL]: I'm not?

THE COURT: Your time is over. You would have been had you saved some of your time. You used more than your half of trial time on direct of your client. That was your and your client's choice; strategy, I don't know, but no. I'm not going to stay through a lunch meeting because you didn't use your trial time wisely. That's not permitted. . . .

*Id*. at 51-52. The trial court then requested proposed decrees be submitted, and the hearing concluded. *Id*. at 52-53.

[9] On January 28, 2020, the trial court issued its decree dissolving the marriage between Husband and Wife and dividing the marital property. *Appellant's App. Vol. 2* at 9-15. The trial court determined that Husband should keep one vehicle, two bank accounts, and various personal property consisting of furniture and tools. *Id*. at 11, 14-15. The trial court awarded Wife one of the vehicles and personal property consisting of furniture with a value of approximately $8,000.00. *Id*. at 12, 14. Husband was awarded the marital home and the associated mortgage. *Id*. at 11, 14. The trial court ordered Husband to refinance the mortgage on the home and provide Wife with her share of the equity in an equalization payment of $40,951.89. *Id*. at 11. The trial court assigned the debt acquired before the petition for dissolution was filed, which appears to have been either $17,000.00 or $20,000.00, to be split equally between the parties. *Id*. at 12, 14. The trial court found that, if Wife has not paid her share of the debt at the time that Husband closed the refinance on the marital home, Husband was to deduct the unpaid amount Wife owed on

the debts as a credit toward her share of the home's equity. *Id*. at 12. The debts incurred by each party after the petition for dissolution was filed were to be kept by the party who incurred the debt. *Id*. The trial court's distribution of the marital estate resulted in an equal division of the marital property. *Id*. at 9-15. Wife now appeals.

# Discussion and Decision

## I. Management of the Proceedings

[10] Wife argues that the trial court violated her due process rights during the final hearing. "Provided that a trial court fulfills its duty to conduct trials expeditiously and consistent with the orderly administration of justice, a trial court has discretion to conduct the proceedings before it in any manner that it sees fit." *J.M. v. N.M.*, 844 N.E.2d 590, 601 (Ind. Ct. App. 2006) (citing *Hoang v. Jamestown Homes, Inc.,* 768 N.E.2d 1029, 1035 (Ind. Ct. App. 2002), *trans. denied*), *trans. denied.* We review the decisions that a trial court makes regarding the conduct of the proceedings for an abuse of that discretion. *Id.*

[11] Wife argues that the manner in which the trial court conducted the final hearing violated her right to procedural due process. Specifically, she contends that she was deprived of her right to a full and fair hearing because the trial court prematurely terminated her case-in-chief and denied her request for further proceedings. Wife also asserts that the trial court denied her procedural due process right to cross examine an adverse witness, Husband.

[12] The Fourteenth Amendment of the United States Constitution prohibits any state from depriving a person of life, liberty, or property without due process of law. *Melton v. Ind. Athletic Trainers Bd.*, 53 N.E.3d 1210, 1215 (Ind. Ct. App. 2016). The Indiana Constitution states that "[a]ll courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." Ind. Const. art. I, § 12. Indiana courts have consistently construed Article I, Section 12, also known as the due course of law provision, as analogous to the federal due process clause. *Melton*, 53 N.E.3d at 1215. The right to cross-examine witnesses under oath is a fundamental right which cannot be denied unless waived. *Theobald v. Theobald*, 804 N.E.2d 284, 286 (Ind. Ct. App. 2004). "[T]he right to effectively cross-examine witnesses can be waived." *Archem, Inc. v. Simo,* 549 N.E.2d 1054, 1060 (Ind. Ct. App. 1990) (finding right to cross-examination waived by mere failure to object when trial court did not provide opportunity to cross-examine the witness), *trans. denied*.

[13] In the present case, Wife was aware that the final hearing was scheduled for two and one-half hours. *Appellant's App. Vol. 2* at 58. Once the record resumed after the approximate seventy-six minutes time span that it had stopped, direct examination of Wife resumed, and sometime before 11:00 a.m., the trial court cautioned Wife's counsel, "[t]he time we lost is assessed to you. We still need to hear from [H]usband by the time we adjourn at 11:30. So, you need to pickup [sic] your pace." *Tr. Vol. II* at 24. A few moments later, the trial court

again cautioned Wife's counsel that her direct examination would end at 11:00 a.m., "straight up." *Id.* at 26. Wife did not object to either of the trial court's admonishments. *Id.* at 24, 26. After several more minutes of additional direct testimony, the trial court interrupted Wife's counsel and informed her that direct testimony was concluded. *Id.* at 28. Wife's counsel again did not make any objection. *Id.* With presumably only thirty minutes left in the hearing, Husband's attorney then cross-examined Wife and presented his direct examination of Husband. *Id.* at 28-32. When Husband's counsel finished his direct examination of Husband, the trial court excused Husband, and Wife's counsel asked if she could cross-examine Husband. *Id.* at 51. When the trial court told her that she could not, the following exchange occurred:

> [COUNSEL]: Why not?
>
> THE COURT: You used thirty minutes this morning on direct of your client. Not thirty minutes, we spend probably eight or ten working together on stipulations and the lack of [financial declarations]. We came back just after ten, you went until 11 with direct of your client. We were set for two and a half hours and you used ninety minutes of that on direct of your client. You can't use more than half the time and then expect to be able to use [Husband's counsel's] time. We're now past our allotted time....
>
> [COUNSEL]: I'm entitled to cross-examine the witness, Your Honor.
>
> THE COURT: No Ma'am, you're not.

[COUNSEL]: I'm not?

THE COURT: Your time is over. You would have been had you saved some of your time. You used more than your half of trial time on direct of your client. That was your and your client's choice; strategy, I don't know, but no. I'm not going to stay through a lunch meeting because you didn't use your trial time wisely. That's not permitted. . . .

*Id*. at 51-52.

Wife made no formal objection to the procedure employed by the trial court. Beyond stating her belief that she was entitled to cross-examine Husband, Wife's counsel did not object to either the trial court cutting short Wife's direct examination or to not allowing cross-examination of Husband. Grounds for objection must be specific and any grounds not raised in the trial court are not available on appeal. *Franciose v. Jones*, 907 N.E.2d 139, 147 (Ind. Ct. App. 2009 (citing *Grace v. State*, 731 N.E.2d 442, 444 (Ind. 2000)), *trans. denied*. Because Wife failed to make a specific objection to the trial court's actions in limiting her direct examination and not providing an opportunity to cross-examination, she waived any error. *See Archem*, 549 N.E.2d at 1060 (finding right to cross-examination waived by mere failure to object when trial court did not provide opportunity to cross-examine the witness).

## II. Division of Marital Property

[14] The division of marital property is within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *In re Marek*, 47 N.E.3d

1283, 1287 (Ind. Ct. App. 2016), *trans. denied*. "We will reverse a trial court's division of marital property only if there is no rational basis for the award; that is, if the result is clearly against the logic and effect of the facts and circumstances, including the reasonable inferences to be drawn therefrom." *Id*. When we review a claim that the trial court improperly divided marital property, we consider only the evidence most favorable to the trial court's disposition of the property without reweighing evidence or assessing witness credibility. *Id*. at 1288-89. "Although the facts and reasonable inferences might allow for a conclusion different from that reached by the trial court, we will not substitute our judgment for that of the trial court." *Id*. at 1289. Such a case turns on "whether the trial court's division of the marital property was just and reasonable." *Morgal-Henrich v. Henrich*, 970 N.E.2d 207, 210-11 (Ind. Ct. App. 2012).

[15]     Wife argues that the trial court abused its discretion in its division of the marital property. She specifically asserts that the trial court abused its discretion when it awarded Husband the marital residence and seems to contend that, because she contributed to the down payment for the home and substantially contributed to its acquisition, she should have received it in the property division, which would have resulted in an unequal division. Wife also claims that the trial court's division of property was an abuse of discretion because the trial court failed to account for all assets and debts of the marriage and assigned values to other assets and debts that were not supported by the evidence. Wife further argues that despite the equalization payment, the trial court actually

awarded an unequal portion of the marital property to Husband because the equalization payment was subject to credits for certain payments made by Husband while the dissolution was pending.

[16] It is well-settled that in a dissolution action, all marital property, whether owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts, goes into the marital pot for division. Ind. Code § 31-15-7-4(a); *Falatovics v. Falatovics*, 15 N.E.3d 108, 110 (Ind. Ct. App. 2014). For purposes of dissolution, property means "all the assets of either party or both parties[.]" Ind. Code § 31-9-2-98(b). This "one pot" theory ensures that all assets are subject to the trial court's power to divide and award. *Carr v. Carr*, 49 N.E.3d 1086, 1089 (Ind. Ct. App. 2016), *trans. denied*. Indiana Code section 31-15-7-4 provides the trial court shall divide the property of the parties in a just and reasonable manner, whether that property was owned by either spouse before the marriage, acquired by either spouse in his or her own right after the marriage and before the final separation, or acquired by their joint efforts. An equal division is presumed to be a just and reasonable division. Ind. Code § 31-15-7-5. A challenger must overcome a strong presumption that the court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal. *J.M.*, 844 N.E.2d at 602.

[17] Here, in dividing the marital property, the trial court determined that Husband should keep one vehicle, two bank accounts, and various personal property

consisting of furniture and tools, totaling approximately $23,000.00. *Appellant's App. Vol. 2* at 11, 14-15. The trial court awarded Wife one of the vehicles and furniture which totaled approximately $8,000.00. *Id*. at 12, 14. Husband was also awarded the marital home and the associated mortgage. *Id*. at 11, 14. The trial court ordered Husband to refinance the mortgage on the home and provide Wife with her share of the equity in an equalization payment of $40,951.89. *Id*. at 11. The trial court assigned the debt acquired before the petition for dissolution was filed, which appears to have been either $17,000.00 or $20,000.00, to be split equally between the parties. *Id*. at 12, 14. However, the trial court found that if Wife has not paid her share of the debt at the time that Husband refinanced the mortgage on the marital home, then Husband was to deduct the unpaid amount Wife owed on the debts as a credit toward her share of the home's equity. *Id*. at 12. The debts incurred by each party after the petition for dissolution was filed were to be kept by the party who incurred the debt. *Id*. The trial court's distribution of the marital estate resulted in an equal division of the marital property. *Id*. at 9-15.

[18] To the extent that Wife is arguing that the trial court erred when it did not award her the marital home, we disagree. The evidence showed that Wife contributed $30,000.00 to the down payment for the home. It also showed that Husband was employed consistently throughout the marriage, that Wife was not and that, at least throughout the time the dissolution was pending, Husband paid for the mortgage, taxes, insurance, and utilities on the home, which totaled at least $13,500.00. *Tr. Vol. II* at 15-17, 20, 31, 33-34. The trial court did not

abuse its discretion in awarding the home to Husband because the evidence showed that both Husband and Wife contributed to the acquisition of the marital home.[1]

[19]     Wife also takes issue with the way that several items were valued and assigned by the trial court in the division of marital property. Our Supreme Court has held that a trial court's disposition of marital property is to be considered "'as a whole, not item by item.'" *Morgal-Henrich*, 970 N.E.2d at 212 (quoting *Fobar v. Vonderahe*, 771 N.E.2d 57, 59 (Ind. 2002)).

> In crafting a just and reasonable property distribution, a trial court is required to balance a number of different considerations in arriving at an ultimate disposition. The court may allocate some items of property or debt to one spouse because of its disposition of other items. Similarly, the factors identified by the statute as permitting an unequal division in favor of one party or the other may cut in different directions. As a result, if the appellate court views any one of these in isolation and apart from the total mix, it may upset the balance ultimately struck by the trial court.

*Fobar*, 771 N.E.2d at 59-60.

---

[1] To the extent that Wife is contending that the trial court disproportionately awarded the marital property to Husband by giving him credit for the expenses he paid toward the marital residence and toward maintenance while the dissolution was pending, we do not find this to be true. While the trial court did state in the decree that Husband shall receive a credit for those expenses, it did not subtract those sums from the equalization payment that Husband is ordered to pay Wife. *Appellant's App. Vol. 2* at 11. Instead, the only sums to be subtracted from the equalization payment were any unpaid portion of Wife's share of the credit card and small bank loan, which were ordered to be divided equally between Husband and Wife. *Id*. at 11-12.

In crafting its division of the marital property, the trial court's distribution of the marital estate resulted in an equal division of the marital property. There is a statutory presumption that "an equal division of the marital property between the parties is just and reasonable." Ind. Code § 31-15-7-5. Wife has not shown how the division of marital property should have differed and, if so, whether it should still result in an equal division of the marital property. Assuming that there should still be an equal division since Wife has not raised any of the statutory reasons why her claimed errors would result in an unequal division, we find that the trial court did not abuse its discretion in its determinations. Wife's challenges, including the miscalculation of a tax refund, loan balance, and asset valuations, are too small to have changed the overall result of the trial court's division of the marital property.[2] Wife has not shown that the trial court's division of the marital property was not just and reasonable, and the trial court did not abuse its discretion.[3]

[20] Affirmed.

Najam, J., and Brown, J., concur.

---

[2] As to the debts, including the Sam's Club credit card that Wife contends were not included in the decree, the evidence showed that the Sam's Club credit card had a zero balance at the time the dissolution petition was filed, and therefore, the outstanding balance at the time of the final hearing was incurred while the petition was pending, and the trial court ordered the parties to be responsible for the debt they incurred since the petition for dissolution was filed. *Tr. Vol. II* at 24, 43; *Appellant's App. Vol. 2* at 12.

[3] We do note that, in her dissolution petition, Wife requested that she be restored to her former name, "Ruth Misiuta," but it appears that the trial court did not address this issue in the dissolution decree. *Appellant's App. Vol. 2* at 9-12, 17-19. To the extent that the trial court has not yet done so, we instruct the trial court to restore Wife to her former name.